```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

         -against-                    MEMORANDUM & ORDER
                                      08-CR-655 (JS)

CHRISTIAN GEROLD TARANTINO,

              Defendant.
----------------------------------X
APPEARANCES:
For the Government: James M. Miskiewicz, Esq.
                    Carrie Nicole Capwell, Esq.
                    Sean C. Flynn, Esq.
                    United States Attorney's Office
                    560 Federal Plaza
                    Central Islip, NY 11722

For Defendant:      Diarmuid White, Esq.
                    White & White
                    148 East 78 Street
                    New York, NY 10021

                    James R. Froccaro, Esq.
                    20 Vanderventer Ave., Suite 103W
                    Port Washington, NY 11050

                    Michael Rosen, Esq.
                    Law Office of Michael Rosen
                    61 Broadway, Suite 1105
                    New York, NY 10006
```

SEYBERT, District Judge:

Pending before the Court is the Defendant's February 7, 2011 sealed letter in which he provides notice that he intends to introduce statements made by Peter Pistone ("Pistone") and former Assistant United States Attorney Joseph Conway during the former's February 4, 2000 plea proceeding

before this Court.[1]  For the reasons that follow, the Defendant's request is GRANTED insofar as he may introduce these statements for the limited purposes of showing that the Government believed Pistone was truthful at the time of his plea and that it had evidence supporting Pistone's allocution.

BACKGROUND

The facts and posture of this prosecution are discussed more thoroughly in the Court's prior orders, most recently in its March 4, 2011 <u>Mastrangelo</u> Decision (the "<u>Mastrangelo</u> Order") and its March 23, 2011 Order granting in part the Government's "other crimes" motion (the "Rule 404(b) Order").  Briefly, as is relevant here, Tarantino is charged in connection with three related murders, including the obstruction-of-justice murder of Louis Dorval. 18 U.S.C. § 1512(a).

Pistone was also prosecuted in connection with the Dorval murder, and he pleaded guilty before this Court on February 4, 2000.  During that proceeding, he stated that he, his brother Joseph Pistone, and Robert Misseri were present when Joseph Pistone shot Dorval in the back seat of a truck.  These

---

[1] In the same letter, the Defendant asks that the Court unseal Pistone's file (00-CR-0076).  The Court has already provided the Defendant, or ordered the Government to provide, the materials concerning Pistone's sentencing to which the Defendant is entitled.  It denied the Defendant's request to unseal the entire file on the record on February 14, 2011.

men placed Dorval's body in a black tool box and dumped the box in the water. (Plea minutes at 14-15.) Pistone further stated that, later on, he learned from Joseph Pistone that "[t]he reason that [Dorval] was killed for is a part of an organized crime thing where he was selling drugs and not kicking back to certain people." (Id. at 15-16.)

When Pistone's allocution was finished, then-AUSA Conway told the Court: "Just so the record is clear, the Government's evidence would show as Mr. Pistone stated, he was in the car at the time that the murder occurred, although he had no knowledge that it was going to happen. Once it did happened [sic], he helped dispose of the body and then subsequently learned as to the reasons why Mr. Dorval was actually killed." (Id. at 17.)

## DISCUSSION

Federal Rule of Evidence 801(d)(2) excludes from the definition of hearsay the following types of out-of-court statements:

> **Admission by party-opponent**. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or

3

> employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

FED. R. EVID. 801(d)(2). As the Government acknowledges, a Government lawyer's statement may in certain circumstances be used against the Government as a party. See United States v. Ford, 435 F.3d 204 (2d Cir. 2006).

I. Mr. Conway's and Pistone's Statements Are Admissible

Mr. Conway's statement is admissible as an admission under Rule 801(d)(2)(D) relevant to show that the Government believed Pistone was truthful at the time of his plea proceeding and that the Government's evidence was in accord with Pistone's version of the Dorval murder. The Defendant may also introduce Pistone's plea allocution as an adoptive admission and to help explain the import of Mr. Conway's statement. In the context of a plea proceeding, Mr. Conway's representation that, "[j]ust so the record is clear, the Government's evidence would show as Mr. Pistone stated . . ." appears to the Court as an endorsement of Pistone's version of events, which made no mention of Tarantino

4

and cited Dorval's failure to kick back a portion of his drug proceeds as the motive for the killing.

The probative value of Mr. Conway's statement outweighs its potential to delay the trial, confuse the jury, or prejudice the Government because Pistone's credibility is clearly a major issue in this case. See FED. R. EVID. 403. The Government's theory now is that, contrary to Pistone's plea allocution, Tarantino and others killed Dorval to prevent him from becoming a cooperating witness. The Government will likely attempt to discredit Pistone, as it did at the Mastrangelo hearing, with evidence that prosecutors eventually came to believe Pistone was untrustworthy. (See Mastrangelo Hrg. Tr. 464-465.) The Defendant, then, ought to be able to show that, at least at one point, the Government thought Pistone was credible and that its evidence supported Pistone's view of the Dorval murder.

## II. The McKeon Test Is Not Helpful

None of the cases cited by either party address whether a defendant may introduce a prosecutor's statements from another defendant's plea proceeding. The Government urges the Court to apply the analysis set forth in United States v. McKeon, 738 F.2d 26 (2d Cir. 1984). There, the Second Circuit considered whether a defense attorney's jury argument in a prior trial of the same defendant could be used against that defendant

in a re-trial. McKeon cautioned that "the evidentiary use of prior jury argument must be circumscribed in order to avoid trenching upon other important policies," and it laid out a three-part framework for considering the admissibility of prior jury argument. Id. at 32. First, the Court "must be satisfied that the prior argument involves an assertion of fact inconsistent with similar assertions in a subsequent trial." Id. at 33. Second, "the statements of counsel were such as to be the equivalent of testimonial statements by the defendant." Id. Third, the Court should "determine by a preponderance of the evidence that the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation for the inconsistency does not exist." Id.

The Court is not completely persuaded that the McKeon test is the proper framework to resolve whether Mr. Conway's statement may be used against the Government. For one thing, it was a representation to this Court during a plea proceeding, not an argument to a jury during a trial. For another, it is Tarantino, not the Government, who offers the statement. These differences seem to mitigate some of the Second Circuit's concerns when it cautioned that "evidentiary use of prior jury argument must be circumscribed," including that the liberal evidentiary use of prior jury argument might chill vigorous advocacy or deprive a defendant of his chosen counsel. See id.

6

at 33.

The Court's discomfort with using the McKeon test here is compounded by the fact that the Second Circuit itself has not been entirely clear about how broadly that analysis should apply. In United States v. Arrington, for example, the Second Circuit emphasized that McKeon applied to jury argument, not all types of attorney statements. See 867 F.2d 122, 127 (2d Cir. 1989) ("Contrary to defendant's assertion that [McKeon's] procedures apply to the use of all statements by defense counsel, we clearly stated in McKeon that we were "circumscrib[ing] the evidentiary use of prior jury argument.") (quoting McKeon) (emphasis in Arrington). More recently, however, and without mentioning Arrington, the Second Circuit applied the McKeon test to hold that a district court properly excluded a prosecutor's out-of-court statement that a Government witness had "no credibility." United States v. Ford, 435 F.3d 204, 215 (2d Cir. 2006). Citing the McKeon analysis, the Second Circuit explained that "'advocacy as to the credibility of witnesses' does not meet at least the first two criteria." Id. (quoting McKeon).[2]

---

[2] The Court is not persuaded by the Government's reliance on Ford, which concerned an extra-judicial statement of opinion, to argue that a prosecutor's opinion about a witness' credibility is inadmissible. (See Gov. Ltr. at 5.) Mr. Conway's statement was more than simply an opinion; it was a representation to this

III. <u>Even Under McKeon, the Statements Should Be Admitted</u>

Setting aside its concerns about the <u>McKeon</u> test, the Court would admit Mr. Conway's statement even if it were to apply that framework. First, Mr. Conway's statement amounts to an admission that the Government believed Pistone was credible, which is inconsistent with the Government's position at the <u>Mastrangelo</u> hearing and likely at trial that Pistone is patently incredible. Second, the statement was testimonial because it was a representation to this Court what the Government's evidence would prove. Third, the inference that Tarantino may draw from the inconsistency--that the Government once thought Pistone was telling the truth about the Dorval murder--is fair.

<u>McKeon</u> also instructs the Court to determine by a preponderance of the evidence whether there is an innocent explanation for the inconsistency. The Court understands the Government's position that the inconsistency was caused by information discrediting Pistone that the Government learned after the plea proceeding. This very well may be an innocent explanation. In its discretion, however, and in light of how critical Pistone's credibility is to the Defense, the Court thinks the better approach is to let the jury evaluate the Government's reasons for its switch.

---

Court that the Government's evidence was "as Mr. Pistone stated."

## CONCLUSION

For the foregoing reasons, the Defendant's motion to admit Mr. Conway's and Pistone's statements during Pistone's plea proceeding is GRANTED to the extent that he may introduce those statements to show that the Government once believed Pistone's information about the Dorval murder was truthful and that the Government's evidence supported Pistone's version of the killing.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   March 27, 2011
         Central Islip, New York