

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NB:JMM

*United States Attorney's Office*

*610 Federal Plaza*
*Central Islip, New York  11722-4454*

February 14, 2012

The Honorable Joanna Seybert
United States District Court
Eastern District of New York
1034 Federal Plaza
Central Islip, New York

> Re:  United States v. Tarantino
>      Criminal Docket No. 08-0655(JS)

Dear Judge Seybert:

The government submits this letter brief in opposition to two pending motions filed by the defendant on February 1, 2012, and in anticipation of a status conference, requested by the defense, scheduled for February 15, 2012 at 2:30 p.m.[1]  The defendant moves for the Court to reconsider its prior denial of a motion to disqualify Assistant United States Attorney James Miskiewicz (Doc. Nos. 284 and 320); second, the defense moves for what it terms "reciprocal" discovery (Doc. No. 321).  For the reasons set forth below, the motions should be denied.

1. The Motion To Reconsider Disqualification
   Is Without Merit and Should Be Denied

On January 12, 2012, the government filed a four-page letter application in support of the issuance of a subpoena <u>duces tecum</u>, pursuant to Federal Rule of Criminal Procedure 17(c), to a local hospital for pre-trial production of medical records regarding treatment for an injury that the defendant received during his disposal of Louis Dorval's body in August 1994.  (Doc

---

[1] The government calculates that the deadline for filing this written response is February 15.  <u>See</u> E.D.N.Y. Local Criminal Rule 12.1(b) and Fed.R.Cr.P 45(a)(providing that responses be filed 14 days after the filing of a motion, excluding the date of the initial filing).  In light of the defendant's request for an accelerated hearing, the government requests that the defense be precluded from filing a reply to this submission after tomorrow's conference.

No. 313).  The application and subpoena were filed on ECF with notice to the defense.

The government seeks to offer the medical records at trial as relevant pursuant to Fed.R.Evid 401 to the remaining counts of the above-captioned indictment.  The documented injury and treatment at a local hospital on the approximate date that the indictment alleges Tarantino "together with others" disposed of Dorval's body, (Indictment at ¶8)[2], in conjunction with anticipated testimony and the defendant's own admissions on the Gargiulo tape that he sustained the injury while disposing Dorval's body, is probative of the defendant's unique motive to kill and conspire to kill Gargiulo and/or prevent his production of the audio tape to federal law enforcement.  Furthermore, the medical records, in conjunction with other evidence, is also relevant to a jury's ability to evaluate the "relationship in time, causation and logic between [Tarantino's] actions," and the official proceeding that Tarantino sought to obstruct through the murder, as charged in Counts Three and Four of the indictment.  See United States v. Quattrone, 441 F.3d 153, 177 (2d Cir. 2006)(quoting Arthur Andersen LLP v. United States, 544 U.S. 696 (2005)).[3]

In the present motion to reconsider disqualification of

---

[2] Paragraph 8 of the Indictment reads as follows:

> On or about August 12, 1994, within the Eastern District of New York, TARANTINO, together with others, killed Dorval, placed Dorval's body into a trunk and discarded the trunk in the Atlantic Ocean off the coast of Long Island, New York.

[3] At the February 27, 2012 hearing the government will also request that the Court consider the medical records, among other evidence, in view of the defendant's allegations that the Gargiulo tape is inauthentic or the product of government fabrication.  That the voice previously identified as the defendant's refers to sustaining a finger injury at a particular point in time that just so happens to coincide with the Indictment's alleged date for Dorval's disposal, the same date precisely documented in medical records that were heretofore concealed by virtue of patient confidentiality, merely supports the Court's prior finding that the tape is authentic; not so the claim of fabrication-- unless one believes, as the defense would have it, in the existence of an omniscient fabricator.

government counsel, the defense grasps at the phrase "the Defendant [sic] killed Dorval" as support for the motion to disqualify.  The defendant is wrong.

As the Court previously noted, the government has never theorized who fired the fatal shot that killed Dorval, only that Tarantino was liable for the murder by virtue of Section 1512(a)(1) and the aiding and abetting statute, Section 2.  The phrase plucked out by the defense ignores that at trial the government sought and the Court instructed the jury regarding aiding and abetting; ignores the fact that the phrase makes no references to the government's theory of who fired the fatal shot; ignores that what remains at issue for trial is the defendant's responsibility for the Gargiulo murder, not a re-trial of the existing counts of conviction; and, fatally, makes no effort to "demonstrate a compelling and legitimate reason to" call a prosecutor as a defense witness at trial.  <u>United States v. Regan</u>, 103 F.3d 1072, 1083 (2d Cir. 1997); <u>see</u> <u>also</u> <u>United States v. Schwartzbaum</u>, 527 F.2d 249, 253 (2d Cir. 1975).

In the government's Rule 17(c) application, the government might have provided a longer recitation of adjudicated facts.  For instance, it would have been an accurate to write: "Mulligan will testify that after the defendant [*who a jury found guilty beyond a reasonable doubt*] killed Dorval...."  That the government used a shorter phrase to summarize facts already a matter of conviction fails to meet the compelling burden required for disqualification of a prosecutor.  Accordingly, the motion for reconsideration should be denied.

2.   The "Sauce for the goose" Motion
     <u>Should Be Summarily Denied</u>

The defendant's motion for discovery is meritless.  Defense counsel's letter, in effect, asks the Court to impose a sanction against the government for obtaining reciprocal discovery following the recent motion to exclude the Gargiulo audio tape evidence.  The motion should be summarily denied.  Additionally, the government respectfully requests that the status conference requested by defense counsel on this motion be cancelled given that it unnecessarily burdens the United States Marshal's Service, whose deputies must transport the defendant from Brooklyn for an application based not on law or the Federal Rules of Criminal Procedure, but solely on the phrase, "What is sauce for the goose is sauce for the gander." (Letter of Stephen H. Rosen, Doc. No. 321 at 2).

Federal Rule of Criminal Procedure 16(b)(1)(A)

4

provides:

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or control; and
>
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.
>
> Rule 16(b)(1)(B) continues:
>
> If a defendant requests disclosure under Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment . . ..

The reciprocal discovery ordered on January 6, 2012 by the Court, for which the defense now seeks additional discovery, arose out of the defendant's motion to exclude the Gargiulo audio recording. (Doc. No. 306). The motion, which is scheduled for a hearing on February 27, 2012, is premised on the defense claim that an over-recording of approximately 18 seconds currently heard on the tape, had been intentionally ignored or concealed by FBI forensic audio examiner Kenneth Marr during his 2005 inspection of the recording and in his trial testimony about that inspection. The motion also contends that audio on those 18 seconds heard on other duplicates of the recording evidences fabrication.

To respond to the motion to exclude, the government moved for reciprocal discovery under Rule 16(a)(1)(A) and (B). In particular, the government sought the copies of the Gargiulo tape that defense experts, Paul Ginsberg, Tom Owen and Norman Dotti had made between July 2009 and December 2011. The government sought to obtain copies whose origination dates would be forensically verified to support or refute the defense claim regarding when the over-recording first appeared. At a January

5

5, 2012 conference, during which the government proffered, inter alia, that the over-recording had not been heard on a duplicate made by the FBI in January 2011, (government's chronology, Doc No. 308), the defense "categorically" denied the truth of the government's proffer.

The Court granted the government's request for reciprocal discovery.  In so ordering, this Court insured that the government's request was both material and reasonable "and not designed to harass [the] defendant[] or to probe unfairly into the defense's strategy." United States v. Estremera, 531 F.2d 1103, 1113 (2d Cir. 1976). Without the reciprocal discovery commanded by Rule 16(b)(1)(A) and (b)(1)(B), the government would have been unable to prepare for the February 27 hearing and rebut the defendant's claim that the Gargiulo tape is inauthentic and/or previously concealed by a government witness.

The granting of reciprocal discovery, however, does not support the defense claim now that it is entitled to access to FBI computers and facilities.  Rule 16(b)(1)(A) and (b)(1)(B) make explicit that the obligation is upon the defense to provide reciprocal discovery in certain instances.  Rule 16 does not provide that upon meeting that obligation a defendant may then seek successive rounds of discovery, presumably to be followed by infinite rounds of reciprocity.  In short, the government has found no authority for the defendant's "sauce for the goose" logic, nor has the defendant cited to any authority in support of such a reading of Rule 16.

Moreover, counsel for the defense fail to articulate what relevant evidence would be obtained by gaining the access they seek to secure government facilities, equipment and computers used for evaluating evidence in a host of applications, from the present murder case to anti-terrorism matters involving national security.  The issue raised by the defendant's exclusion motion, which prompted the Court's ordered reciprocal discovery, is the authenticity of the Gargiulo tape itself, and the merits of the defendant's claim that the tape always bore the 18 second over-recording currently heard, as well as the ancillary claim that government agents falsely concealed it.

The reciprocal discovery recently obtained from the defense, in particular the copies of the Gargiulo recording made by defense expert Paul Ginsberg in July 2009, bear out that the over-recording now heard was not on the Gargiulo tape originally. The over-recording that is the subject of the present motion is not on Ginsberg's copy.  Nor was the over-record present in April 2004 when the first digital copy of the tape was made, the copy

which was offered and played in its entirety at trial.  (GX TDC-1).

In other words, the reciprocal discovery ordered by the Court refutes the premise of the defendant's motion to exclude.  Without application of Rule 16, this critical fact could not have been framed for the Court at the February 27 hearing.  That the defense is disappointed by the results of the reciprocal discovery ordered by the Court, does not entitle it to the relief requested— especially when such relief is grounded not on legal precedent, or rule, but upon adages about waterfowl and demands for a fishing expedition into secure government facilities.

For the foregoing reasons, the motions should be summarily denied.

> Respectfully submitted,
>
> LORETTA E. LYNCH
> United States Attorney
>
>             /S/
> By:  _____
> James M. Miskiewicz
> Assistant U.S. Attorney

cc:   Defense counsel of record