LAW OFFICES OF
STEPHEN H. ROSEN, P.A.
100 ALMERIA AVENUE, SUITE 205
CORAL GABLES, FLORIDA 33134

STEPHEN H. ROSEN, ESQUIRE                                    TELEPHONE: (305) 448-9900
EMAIL: attnyrosen@aol.com                                    FAX: (305) 448-9337

March 7, 2012

**BY ECF**

The Honorable Joanna Seybert
U.S. District Court
P.O. Box 9014
Central Islip, New York 11722-9014

       Re:    U.S. v. Christian Gerold Tarantino
              Case No. 08-CR-655(JS)

Dear Judge Seybert:

       This is the defendant's post-hearing brief on the admissibility of the tape in question. The symbol "T" designates the pages of the evidentiary hearing held on February 27, 28 and 29, 2012 (T.1-425). The background facts are familiar to all and are not repeated. The defendant is challenging the government's ability to meet its burden of proving accuracy and authenticity of the tape. That burden must be met before the tape can be admitted into evidence. Although the Second Circuit has not adopted a specific test for authenticating and admitting recordings, unlike other circuits, the Second Circuit holds the government to a higher burden of proof in seeking to introduce recordings on the ground that "recorded evidence is likely to have a strong impression upon a jury and is susceptible to alteration, [and accordingly] we have adopted a general standard, namely, that the government 'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recordings." *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977). (quoting *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967). *See also* Federal Rule of Evidence 901(a) (requiring the proponent of any evidence to submit "evidence sufficient to support a finding that the matter in question is what its proponent claims."); *United States v. McKeever*, 169 F.Supp. 426, 430 (S.D.N.Y.1958) (approving the following seven factors as a foundation for the introduction into evidence of sound recordings: (1) the recording device was capable of taping the conversation being offered; (2) the operator of the device was competent to operate the same; (3) the recording is authentic and correct; (4) changes, additions or deletions have

-1-

not been made in the recording; (5) the recording has been preserved in a proper manner; (6) the speakers can be identified; and (7) the conversation elicited was made voluntarily and in good faith, without any inducement). According to the Second Circuit, these seven factors constitute "a valuable formulation of the factors a trial judge should consider in making an initial determination whether a sufficient foundation for the admissibility of the tape recordings has been established." *Fuentes*, 563 F.2d at 532.

In *United States v. Armstrong*, 626 F.Supp.2d 229 (D.Puerto Rico 2009), the defendant sought suppression of an audiotape of a conversation (identified as "N-17") between the defendant and a government cooperating witness. A hearing was held before the Magistrate Judge who heard the testimony of an expert for each party. The Magistrate Judge recommended suppression of the tape because it "contains several anomalies which make it unreliable." *Id*. at 232. More specifically, the Magistrate Judge found: (1) N-17 is not a recording of a complete conversation but rather its segments are independently continuous; (2) the length of a stop/start in the recording cannot be determined; (3) the abrupt stop at the end of the recording indicates that the conversation is incomplete; (4) there is a controversy regarding whether the tape's header had been partially erased and, (5) the date on N-17's header is different from that on the Government's Report of Investigation. *Id*. The Magistrate Judge further noted that the Government had failed to present evidence pertaining to N-17's chain of custody or regarding whether the tape accurately reflected the conversation recorded. *Id*.

The Government objected to the Magistrate Judge's recommendation. Upon review, the district judge agreed with the Magistrate Judge and ordered suppression of the tape based upon two grounds: first, the tape was not an accurate reflection of the conversation in question; and second, there was a lack of sufficient evidence of chain of custody. As to the first ground, the Court held as follows:

> First and foremost, the Government's own expert witness, Dickey, concedes that N-17 is not a recording of a complete conversation but rather that it has two segments. A first segment between {00:23-03:34} and a second segment between {03:34-07:04}. Dickey characterized the segments as being "independently continuous." (Tr. 0/25/08, Docket No. 243, pp. 18-24). In other words, the Government's expert witness was not able to affirm that N-17 is the recording of a complete conversation. Neither was he able to establish the length of the stop/start between N-17's two segments.FN1 Id. at p. 24.
>
> > FN1. It is unnecessary to discuss in depth the other anomalies identified by the Magistrate Judge because this Court considers that the fact that N-17 has two segments is enough to conclude it is not accurate, authentic and trustworthy. These are: (1) the abrupt stop at the end of the recording; (2) whether or not the tape's header had been partially erased; (3) the date on N-17's header (December 27, 2003) is different than that on the Government's Report of Investigation of January 8, 2004 (January 7, 2003). (Docket No. 257)
>
> Since the Government's own expert witness is unable to establish that N-17 is the recording of a complete conversation and because it is unable to establish the amount of time between N-17's two segments, it must be concluded that the Government did

not prove that the recording accurately reflects the conversation in question as required [citing *United States v. Carbone*, 798 F.2d 21 (1st Cir. 1986)].

The Government also alleges that the Magistrate Judge focused only on the portions of N-17's transcript that are right before and after the break in the recording when deciding whether N-17 is accurate and trustworthy. The Government contends that the totality of the recording shows one continuous conversation. The Government contends that, "[a] review of the transcript demonstrates continuity both in thought and context by the speakers, thus placing into doubt whether or not the break in the conversation was of any substantial length." (Docket No. 22, p. 7). This Court is unpersuaded by the Government's argument. Even if it may be possible to read the transcript in a way that could lead a reasonable person to believe a single conversation was recorded, the Government's own expert witness was unable to categorically state that N-17 is technically the recording of a single conversation. Thus, this Court finds that the Government has failed to establish that the recording is accurate, authentic and trustworthy.

*Armstrong*, 626 F.Supp.2d at 233-34.

As to the second ground, the Court in *Armstrong* also found suppression warranted upon the defendant's chain of custody contention. As to this ground, the Court found as follows:

The Government further objects to the Magistrate Judge's finding that it failed to present evidence relating to N-17's chain of custody. (Docket No. 266, p. 7). According to the Government, a possible defect in the chain of custody factors into the evidence's weight rather than its admissibility. The Government is partially correct. It is well established that a defect in the chain of custody factors into the weight of the evidence and not into its admissibility. *United States v. Barrow*, 448 F.3d 37, 42 (1st Cir.2006). However, chain of custody must be established in order to authenticate evidence because "authentication is a condition precedent to admissibility." *Id*. The First Circuit has said, "if the offered evidence is of the type that is not readily identifiable or is susceptible to alteration, a testimonial tracing of the chain of custody is necessary. The purpose of testimonial tracing is to render it improbable that the original item either has been exchanged with another or has been tampered with or contaminated." *United States v. Anderson*, 452 F.3d 66, 80 (1st Cir.2006) (citing *United States v. Abreu*, 952 F.2d 1458, 1467 (1st Cir.1992)). In other words, even if a possible defect in the chain of custody is to be weighed by the jury, the Government must still establish chain of custody and authenticate its evidence. In this case, the Government has not offered any evidence or testimony to establish N-17's chain of custody. It must be concluded that the Government failed to authenticate N-17, which renders it inadmissible. In sum, this Court finds that because N-17 is untrustworthy and since the Government has not authenticated it, N17 must be suppressed.

*Armstrong*, 626 F.Supp.2d at 234-35.[1]

In *United States v. Cisneros*, 59 F.Supp.2d 58 (D.D.C. 1999), Cisneros, a former Secretary of Housing and Urban Development, his employees, and the Secretary's former mistress were indicted for various offenses. Cisneros moved to suppress tapes made by his former mistress on various grounds, including authenticity, accuracy, and trustworthiness. The Court granted the motion as to four of the tapes upon the following reasoning:

> Certain portions of these tapes contain noticeable breaks in the recording and flow of the conversation that indicate obvious alteration. As to these particular portions, the government has failed to demonstrate that the "possibilities of misidentification and adulteration".....have been eliminated as a "matter of reasonable probability" [citing *United States v. Sandoval*, 709 F.2d 1553, 1554 (D.C.Cir. 1983)]. The portions of the tapes containing these breaks may not be introduced in the [prosecution's] case in chief. Medlar [the former mistress] may, however, testify as to her recollection of the omitted conversation and the defendant may, of course, cross-examine her.

*Cisneros,* 59 F.Supp.2d at 64-5 (footnotes omitted).

Applying the above-cited authorities to the facts of this case, the Court is requested to find that the government cannot lay the required foundation for the admissibility of the tape. At the outset, it must be noted that it is without dispute that the tape has been changed and altered. The so-called "overrecording" in the "designated area" of the tape cannot be disputed. Indeed, near the close of the evidentiary hearing, the Court stated that the evidence establishes that there is an overrecord and that the government so conceded. (T. 411-12). Also, both defense experts testified that was an overrecording at 1:28:43 in the tape. (T. 185, 324).

The government's expert, Kenneth Marr, stated that a voice on the overrecord "sounds like my voice...". (T. 47). Marr also stated that he could not recall any time, other than when there was a recording device present during the *Mastrangelo* preparation, when his voice could have been recorded onto the original tape. (T. 79). However, Marr also acknowledged that the safety caps were removed from the original tape, thereby preventing any overrecord. (T. 84-6). Marr was asked to explain how his voice could be recorded onto the tape when the safety caps had been removed.

---

[1] The Second Circuit follows the same principles governing chain of custody and authentication. *See United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir.2001); *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999); *United States v. Sovie*, 122 F.3d 122, 127 (2d Cir.1997). *See also People v. Ely*, 68 N.Y.2d 520, 527, 510 N.Y.S.2d 532, 503 N.E.2d 88 (1986) (holding that tape recording was inadmissible where no participants in the recorded conversation testified and the chain of custody did not establish "precisely when or even where" the recordings were made). The government bears the burden of producing clear and convincing evidence of authenticity and accuracy as a foundation for the admission of recordings. *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.1977).

Marr's responded that there was a "possibility" that a hand-held recorder which was used by the government during the Mastrangelo hearing preparation "malfunctioned in some way such that the safety tab sensor would not sense that the safety tabs had been removed." (T. 87). Marr offered no additional explanation about such a "sensor" or to how there could be such a malfunction. Notably, the hand-held recorder was never tested, analyzed, or even produced. Nor did the government ever supply that recorder to its expert witness at the hearing, David Snyder, for examination. (T. 409-10). In sum, there is no proof whatsoever to support Marr's "theory."

In addition, defense expert Owen testified, without contradiction, that the overrecording "destroyed what was on there before." (T. 185). Owen went on to stated: "Any overrecording of any tape destroys the event -- the integrity of the event because you don't -- you can't scientifically say what happened or what didn't happen, other than the fact that it is gone." (T. 185).

The defense has not been able to locate a single decision where a federal court admitted a recording such as this one, which has been in the custody and control of the government from the outset, where it is undisputed that the critical portion of the recording has been altered, changed, and edited by virtue of an overrecord, and where the government cannot satisfactorily explain how or when the overrecording took place. Upon less compelling facts for inadmissibility, the courts in *Armstrong* and *Cisneros* excluded he recordings in those cases. Those decisions are analogous. As in *Armstrong*, no witness is able "to affirm that [the tape] is the recording of a complete conversation." Indeed, it has been proven that the recording is not complete. Accordingly, as in *Armstrong*, "the Government did not prove that the recording accurately reflects the conversation in question as required." Similarly as in *Cisneros*, the overrecording here constitutes a "noticeable break in the recording and flow of the conversation that indicates obvious alteration." Therefore, "as to these particular portions [here, the "designate area"] the government has failed to demonstrate that the 'possibilities of misidentification and adulteration'.....have been eliminated as a "matter of reasonable probability" and "[t]he portions of the tapes containing these breaks may not be introduced in the [prosecution's] case in chief."

Respectfully submitted,


S/STEPHEN H. ROSEN

SHR/mr