1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

                Plaintiff,       CR-00-0122

    - against -         U.S. Courthouse
                          Central Islip, New York

JOSEPH PISTONE,

              Defendant.    July 19, 2001
                          11:55 o'clock a.m.

- - - - - - - - - - - - - - - -X

TRANSCRIPT OF GUILTY PLEA
BEFORE THE HONORABLE ARTHUR D. SPATT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:      LORETTA E. LYNCH
                      United States Attorney
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                      BY:  JAMES MISKIEWICZ, ESQ.

For the Defendant:       GARY SCHOER, ESQ.

Also Present:           HON. DENIS DILLON,
                      Nassau County District Attorney
                      BY:  MARY B. RUDDY, ESQ.,
                          Assistant District Attorney

Court Reporter:         Ellen S. Combs, CSR
                      1180 Federal Plaza
                      Central Islip, New York 11722
                      (631) 712-6107

Proceedings recorded by mechanical stenography
Transcript produced by CAT

2

1              (Call to order of the Court.)

2              THE CLERK:  Criminal cause for guilty plea,

3     Criminal 00-0122, United States of America vs Joseph

4     Pistone.

5              THE COURT:  Do you want to come up, please?

6              Appearances, please.

7              MR. MISKIEWICZ:  James Miskiewicz for the United

8     States.

9              Good afternoon, your Honor.

10             THE COURT:  Good afternoon.  Is it afternoon?

11    Not yet.

12             MR. MISKIEWICZ:  Not yet.

13             MR. SCHOER:  Good morning, your Honor.

14             For the defendant, Gary Schoer.

15             THE COURT:  What is happening in this case?

16             MR. MISKIEWICZ:  Your Honor, I understand that

17    that the defendant is prepared to plead guilty to count

18    one of the indictment as it has been superseded, and

19    specifically to committing two predicate acts in

20    furtherance of a racketeering enterprise; namely,

21    conspiracy to commit murder and arson.

22             I feel I am obligated to also -- I have to tell

23    the Court that in just a brief few seconds before the

24    Court took the bench just now, there were certain

25    statements made by the defendant in my presence and

3

1    counsel's presence, that lead me to believe that perhaps

2    the defendant is not prepared to make that kind of

3    allocution, or that the defendant has some reservations.

4              So I would need to put that on the record.  And

5    I don't know if counsel for Mr. Pistone needs additional

6    time or not, but I'll leave that to him.

7              THE COURT:  Mr. Schoer, does your client want to

8    plead guilty?  Is he not sure, or what?

9              MR. SCHOER:  My client wants to plead guilty.

10              THE COURT:  Okay, you heard what the prosecutor

11    just said.  So there is no hesitancy?

12              MR. SCHOER:  There is no hesitancy on

13    Mr. Pistone's part at all, Judge.

14              THE COURT:  All right.

15              You are Joseph Pistone?

16              THE DEFENDANT:  Yes, sir, pis-tony.

17              THE COURT:  Pis-tony?

18              THE DEFENDANT:  Yes, sir, spelled the same way,

19    just pronounced different.

20              THE COURT:  Pis-tony.

21              Mr. Pistone, your attorney advises me that you

22    wish to plead guilty to count one of the superseding

23    indictment?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  Which charges you with knowingly and

4

1    intentionally participating in the conduct of an

2    enterprise through a pattern of racketeering activity with

3    regard to Predicate Act B, murder conspiracy; conspiring

4    to murder one Louis Dorval.

5            And with respect to Racketeering Act Two B,

6    knowingly and intentionally conspiring to damage and

7    destroy by means of fire, a building, to wit:  The

8    Hav-a-Home Kennel in Brookville.

9            Do you understand the nature of the crimes that

10   you are going to plead guilty to?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Do you wish me to read these counts

13   at this time?

14           MR. SCHOER:  No, your Honor.

15           THE DEFENDANT:  No, sir.

16           THE COURT:  Mr. Pistone, this plea is a serious

17   decision, and I must be certain that you make it

18   understanding your rights and the consequences of your

19   plea.

20           I'm going to explain certain rights to you, and

21   then ask you some questions.  I want your answers to be

22   under oath.

23           Please swear in the defendant.

24   JOSEPH PISTONE, the defendant, having been first duly

25           sworn, was examined and testified as follows:

5

1   BY THE COURT (to the defendant):

2   Q.   Mr. Pistone, do you understand that having been sworn

3   to tell the truth, you must tell the truth?

4          Do you understand that?

5   A.   Yes, sir.

6   Q.   If you were to deliberately lie in response to any

7   question I ask you, you could face further criminal

8   charges for perjury.

9          Do you understand that?

10  A.   Yes, sir.

11  Q.   If I say anything that you do not understand, or if

12  you need me to repeat anything, you have only to ask.  It

13  is important that you understand everything that goes on

14  in this proceeding.

15         Is that clear?

16  A.   Yes.

17  Q.   How old are you, Mr. Pistone?

18  A.   Thirty-four.

19  Q.   How far did you get with your education?

20  A.   Twelfth grade.

21  Q.   That is high school?

22  A.   Yes, sir.

23  Q.   Mr. Pistone, I must be certain that whatever

24  decisions you make today, and they certainly are

25  important, you make with a clear head.  So I'm going to

6

1    ask you some questions about your health.

2              Are you presently, or have you recently been

3    under the care of a doctor for any reason?

4    A.    No, sir.

5    Q.    Are you presently, or have you recently been under

6    the care of a psychiatrist or a psychologist for any

7    reason?

8    A.    No, sir.

9    Q.    In the past 24 hours, have you taken any pills or

10   drugs, or medicine, or alcoholic beverages of any kind?

11   A.    No, sir.

12   Q.    Have you ever been hospitalized or treated for any

13   drug-related problem?

14   A.    No, sir.

15   Q.    So you're not taking any medication at the present

16   time?

17   A.    Not at this time, sir.

18   Q.    Is your mind clear as you stand here today?

19   A.    Yes.

20         THE COURT:  Mr. Schoer, have you discussed the

21   question of this guilty plea with your client?

22         MR. SCHOER:  Yes, your Honor.

23         THE COURT:  In your view, does he understand the

24   rights he would be waiving by pleading guilty?

25         MR. SCHOER:  Yes, your Honor.

7

1          THE COURT:  Do you have any question as to his

2     competency to proceed?

3               MR. SCHOER:   No question as to his competency.

4          THE COURT:  You're appointed, counsel?

5          MR. SCHOER:  Yes, your Honor.

6     BY THE COURT:  (Continuing)

7     Q.   Mr. Pistone, your attorney, Gary Schoer, was

8     appointed by the Court to represent you in this case.  He

9     is an experienced criminal defense lawyer.

10               Are you satisfied with the assistance your

11    lawyer, Gary Schoer, has given you thus far in this

12    matter?

13    A.   Very much so, yes.

14    Q.   What?

15    A.   Very much so, yes.

16    Q.   Do you feel you need any more time to discuss with

17    him the question of this guilty plea?

18    A.   No, sir.

19    Q.   Because if you do, I will certainly give it to you.

20               Do you need any more time?

21    A.   No, sir.

22    Q.   Now Mr. Pistone, you have a right to continue to

23    plead not guilty to these charges and go to trial.

24               Do you understand that?

25    A.   Yes, I do.

8

1    Q.    If you plead guilty to these charges, you will give

2    up some very valuable rights.  Please listen to the rights

3    you will give up if you plead guilty.

4            You have a right under the constitution and laws

5    of the United States to a speedy and public trial before a

6    jury with the assistant of your attorney.

7            Do you understand that?

8    A.    Yes, I do.

9    Q.    At the trial you would be presumed to be innocent.

10   You would not have to prove that you were innocent.  This

11   is because under our system of law it is the government

12   that must come forward with proof that establishes, beyond

13   a reasonable doubt, that you are guilty of these crimes.

14   If the government fails to meet this burden of proof, the

15   jury would have the duty to find you not guilty.

16           Do you understand that?

17   A.    Yes, I do.

18   Q.    At the trial witnesses for the government would have

19   to come here to this courtroom and testify in your

20   presence.  Your lawyer would have the right to

21   cross-examine those witnesses.

22   A.    Yes.

23   Q.    He could raise legal objections to the evidence the

24   government sought to offer against you.  He could offer

25   evidence in your behalf, if you thought there was evidence

9

1    that might help you in this case.

2            Do you understand that?

3    A.    Yes, I do.

4    Q.    Further, at the trial you would have the right to

5    testify in your own behalf if you wish to do so.  On the

6    other hand, you could not be forced to be a witness at a

7    trial.  This is because under the Constitution of the

8    United States, no person can be compelled to be a witness

9    against himself.

10           So, if you wish to go to trial but chose not to

11   testify, I would instruct the jury that they could not

12   hold that against you.

13           Do you understand that fundamental right?

14   A.    Yes, I do.

15   Q.    If, instead of going to trial you plead guilty to

16   these crimes, and if I accept your guilty plea, you will

17   be giving up your right to a trial and all the other

18   rights I have just discussed.  There will be no trial in

19   this case.  There will be no appeal on the question of

20   whether you did or did not commit these crimes.  The only

21   thing you could appeal would be if you thought I did not

22   properly follow the law in sentencing you.

23           Do you understand that?

24   A.    Yes, I do.

25           THE COURT:  Is there a waiver of appeal in the

10

1    plea agreement?

2            MR. MISKIEWICZ:  There is, your Honor.

3            THE COURT:  Where is it?

4            MR. MISKIEWICZ:  Paragraph 4 on page 3 indicates

5    that the defendant will not file an appeal or otherwise

6    challenge this conviction or sentence in the event that

7    the Court imposes a term of imprisonment of 240 months, or

8    below, which is our estimate, our statement as to what we

9    believe the statutory maximum would be under what the

10   defendant is pleading guilty to.

11   BY THE COURT:   (Continuing)

12   Q.   Mr. Pistone, did you hear what the prosecutor just

13   said?

14   A.   Yes, I did.

15   Q.   In paragraph 4 there is a waiver of appeal under

16   certain circumstances.

17            Do you understand that?

18   A.   Yes.

19   Q.   Normally without this waiver of appeal you would have

20   the right to appeal from any part of any sentence that is

21   imposed on you.

22            Do you understand?

23   A.   Yes.

24   Q.   You can't appeal from the crime if you plead guilty,

25   but you can appeal from the sentence.

1    A.    Okay.

2    Q.    But you have a right to give up that right to appeal.

3    And you have given it up, according to this paper, this

4    agreement.  If the Court imposes a term of imprisonment of

5    240 months or less, you have given up the right to appeal.

6            Do you understand that?

7    A.    Yes, I do.

8    Q.    Do you wish to give up your right to appeal if the

9    Court imposes a sentence of 240 months or less?

10   A.    Yes.

11   Q.    Now Mr. Pistone, are you willing to give up your

12   right to a trial?

13   A.    Yes, sir.

14   Q.    And the other rights I have just discussed with you?

15   A.    Yes.

16            THE COURT:  Is there an agreement pursuant to

17   which this plea is being offered, Mr. Miskiewicz?

18            MR. MISKIEWICZ:  Yes, your Honor.

19            There is a written plea agreement, a copy of

20   which was provided to the Court's chambers earlier today.

21   I believe the defendant has signed the original copy.

22   Mr. Schoer has a copy of it.

23            I would also like to indicate that the agreement

24   is signed both by representatives of the United States

25   Attorney's office, including myself on page 6, and is also

1    countersigned by Frank Lanzo.

2              THE COURT:  L-A-N-Z-O?

3          MR. MISKIEWICZ:  Yes, your Honor.

4              THE COURT:  We may not know Mr. Lanzo.  In fact,

5    I don't know him.

6          MR. MISKIEWICZ:  Mr. Lanzo is Chief of the

7    Rackets Bureau for the Nassau County District Attorney's

8    office, and in accordance with this agreement -- this

9    agreement is in satisfaction of all of the charges in the

10   current indictment here federally, and is also in

11   satisfaction of a parallel state arson prosecution which

12   is set to go to trial on Monday, I believe in Supreme

13   Court in Nassau County.

14             THE COURT:  Is that in this plea agreement?

15         MR. MISKIEWICZ:  Your Honor, it is in the plea

16   agreement insofar as it states in paragraph 5(a), that the

17   office, and the Nassau County District Attorney's office,

18   agree that no further criminal charges will be brought

19   against this defendant for the offenses described in this

20   indictment.

21             THE COURT:  So there is a state charge of arson,

22   you say?

23         MR. MISKIEWICZ:  There is a state charge of

24   arson, which is also charged here as a predicate act; that

25   is the predicate arson act in the indictment.

13

1          THE COURT:  So that is the one that --

2          MR. SCHOER:  The kennel, Judge, is the same.

3          THE COURT:  The kennel is the same as count one,

4    Racketeering Act Two?

5          MR. MISKIEWICZ:  That's correct.

6          THE COURT:  Arson conspiracy?

7          MR. MISKIEWICZ:  And Two B.

8          THE COURT:  Having to do with Hav-a-Home Kennel,

9    Old Brookville, New York?

10         MR. MISKIEWICZ:  Yes, your Honor.

11         THE COURT:  There is a charge against him in the

12   state court as well?

13         MR. MISKIEWICZ:  Yes.

14         THE COURT:  And that case is scheduled to go to

15   trial, you say?

16         MR. MISKIEWICZ:  On Monday.

17         THE COURT:  On Monday.  Monday is what, July?

18         THE CLERK:  23rd.

19         THE COURT:  July 23rd.  And this plea includes

20   what is going to happen to that charge on Monday?

21         MR. MISKIEWICZ:  My understanding is, that upon

22   sentencing here the District Attorney's Office -- actually

23   the Court will dismiss the pending state count of arson.

24         THE COURT:  How am I going to do that?

25         MR. SCHOER:  Not you, your Honor, the State

1    Court will dismiss it.  It is my understanding that that

2    has already been worked out.  And that could be done in

3    absentia, and the defendant wouldn't have to be produced.

4            THE COURT:  So we'll make it very clear.   If

5    this defendant pleads guilty to the charge now before me,

6    there will be a dismissal of the state charge for arson

7    that is presently pending in the County Court, Nassau

8    County?

9            MR. MISKIEWICZ:  Correct.

10           THE COURT:  What is the number of that?  Does

11   anybody know?

12           MR. MISKIEWICZ:  Your Honor, the assistant DA

13   who is handling that matter is in the courtroom.  If I can

14   get that --

15           THE COURT:  Where is he?

16           MR. MISKIEWICZ:  She, Mary Ruddy, who is an

17   assistant district attorney in the Rackets Bureau.

18           THE COURT:  What is her name?

19           MR. MISKIEWICZ:  Mary Ruddy.

20           THE COURT:  Come up, Ms. Ruddy.

21           Welcome to the Federal Court, Ms. Ruddy.

22           MS. RUDDY:  Thank you, your Honor.  Good

23   afternoon.

24           THE COURT:  Is it afternoon?  Yes, it is

25   afternoon.

1    Do you understand that that is what is going to

2  happen?

3        MS. RUDDY:  Yes, your Honor.

4        THE COURT:  That if the defendant pleads guilty

5  and is sentenced by me to whatever the sentence is here,

6  that the indictment in the County Court, Nassau County,

7  for arson involving the premises in Old Brookville will be

8  dismissed?

9        MS. RUDDY:  That's correct, your Honor.

10        THE COURT:  That is part of the deal.  Right?

11        MS. RUDDY:  Yes, Judge.

12        THE COURT:  That is what you have agreed, to do

13  that, to induce him to plead guilty.  Correct?

14        MS. RUDDY:  Well, Judge, my understanding is,

15  partly.

16        THE COURT:  Partly?

17        MS. RUDDY:  Well, once he pleads here, Judge, I

18  believe that we would be jeopardied out, in any event.

19        THE COURT:  Whether you would be or not, you're

20  going to dismiss the indictment?

21        MS. RUDDY:  That's correct, Judge.  We are.

22        THE COURT:  You're not relying on this, you're

23  making an agreement to do that.  Right?

24        MS. RUDDY:  Yes, your Honor.

25        THE COURT:  And that is partly to induce him to

1    plead guilty.

2              Tell Mr. Dillon I have you here.  Don't worry

3    about it.

4              MS. RUDDY:  Sorry, Judge.

5              THE COURT:  He is a good friend of mine.  We

6    campaigned together.  Did you know that?

7              MS. RUDDY:  No, I didn't.

8              MR. SCHOER:  Mr. Pistone also is under the

9    impression -- and I don't represent him in the State Court

10   -- but he is under the impression there will be no other

11   charges pending against him in the State Court.

12             THE COURT:  Who represents you in the State

13   Court?

14             MR. SCHOER:  He is assigned.  Mr. Scott.

15             THE COURT:  Scott, S-C-O-T-T?

16             MR. SCHOER:  Yes, James Scott, I believe.

17             THE COURT:  Is he here?

18             MR. SCHOER:  No, he is not here.  But I have

19   spoken to Mr. Scott, and based on my conversations with

20   Mr. Scott there are no other charges other than the arson

21   charges, or at least that indictment.

22             THE COURT:  And he has already pled guilty to

23   bail jumping, attempted bail jumping?

24             MS. RUDDY:  Right.

25             MR. SCHOER:  And it is my understanding and

ELLEN S. COMBS, CSR
Official Court Reporter

1    Mr. Pistone's understanding that that sentence will run

2    concurrent with your Honor's sentence, and he would be

3    sentenced in absentia with respect to that.

4              I believe that was all put on the record this

5    week when they appeared before the State Court Judge.

6              THE COURT:  Well, what Judge is this before?

7              MS. RUDDY:  It is before the Honorable Jeffrey

8    S. Brown, Nassau County Court Judge.

9              And your Honor, so the record is clear.  This

10   defendant was present in Nassau County Court on July 17th,

11   2001, where all of this was placed on the record.  This

12   defendant does have two other indictment numbers pending

13   against him in Nassau County Court in addition to the

14   arson.

15             THE COURT:  What about those two indictments?

16             MS. RUDDY:  The defendant has already pled

17   guilty, I don't recall the indictment number, to attempted

18   bail jumping, a Class C felony.  He is awaiting sentence

19   on that.

20             In addition, another indictment charging him

21   with criminal possession of a forged instrument, I believe

22   second degree, is going to be dismissed in satisfaction

23   once he is sentenced on the attempted bail jumping.

24             THE COURT:  Now, this attempted bail jumping, is

25   that involved in this plea here?  Is that going to be

1    concurrent with the time that I am going to sentence him?

2            MS. RUDDY:  Judge, I don't know what the

3    understanding is with respect to the attempted bail

4    jumping.  I can tell you that --

5            THE COURT:  That is what Mr. Schoer said just

6    now.

7            MS. RUDDY:  Well, Judge Brown's commitment is an

8    indeterminate term of imprisonment of two to four years.

9    And the defendant will be sentenced in absentia after he

10   is sentenced on the matter pending before your Honor.

11           THE COURT:  So in the State Court, Judges are

12   permitted to make promises?  Are they?

13           MS. RUDDY:  Yes, Judge.

14           THE COURT:  In the Federal Court we're not

15   permitted to do that.  Do you know that?

16           MS. RUDDY:  I'm not familiar with your practice.

17   I'm sorry, your Honor.

18           THE COURT:  Well, we're not.  Rule 11 says we're

19   not.  But I want to make sure that the defendant and his

20   lawyer here understand that.

21           This two to four you say is not going to be

22   concurrent with my sentence, or it is going to be

23   concurrent?

24           MS. RUDDY:  Judge, I honestly, I can't answer

25   that question.

19

1    THE COURT:  Who would know that?  This is
2  important to know.  Isn't it?
3        MS. RUDDY:  Judge, I don't know the legal
4  operation of, and the position of a state sentence after
5  the defendant has been sentenced federally.
6        THE COURT:  Well, an agreement is an agreement,
7  whether it's state, federal, or both.  What is the
8  agreement?  What was the agreement when he pled guilty to
9  the attempted bail jumping?  Were you there at the time?
10       MS. RUDDY:  Yes, I was, Judge.
11       THE COURT:  What was the agreement?  Was the
12  agreement that he was to be sentenced concurrently with
13  this sentence?  It is going to be far in excess of two to
14  four years.
15       MS. RUDDY:  Your Honor, if my recollection is
16  correct --
17       THE COURT:  Is it going to be consecutive to the
18  sentence that I -- this is important for the defendant and
19  his lawyer to know.
20       MS. RUDDY:  Well, your Honor, at the time the
21  plea was entered on the attempted bail jumping, I don't
22  believe that the defendant had been indicted in Federal
23  Court for the arson.  So I don't think that that was ever
24  addressed, because that was not an issue at the time of
25  the plea.

ELLEN S. COMBS, CSR
Official Court Reporter

20

1    THE COURT:  How long ago was this indictment for

2  attempted bail jumping?

3    MS. RUDDY:  The date of the plea, it was 2000,

4  probably March of 2000.

5    THE COURT:  He was indicted in March of 2000?

6    MS. RUDDY:  No, he took a plea of guilty.

7    THE COURT:  Was he indicted for attempted bail

8  jumping prior to the federal indictment?

9    MS. RUDDY:  Yes, your Honor, he was.

10    THE COURT:  Well, what is the agreement?  Who

11  would know what the agreement is?

12    Were you there at the time, Mr. Schoer?

13    MR. SCHOER:  No, Judge.  But I think Ms. Ruddy

14  is correct, in the sense that when he actually took the

15  plea, at the time the agreement was made there was no

16  discussion of concurrent time, consecutive time.

17    THE COURT:  So then it could be consecutive

18  time?

19    MR. SCHOER:  Yes.  But it was my understanding

20  that -- this is from Mr. Pistone -- that this was

21  mentioned this week when they appeared before Judge Brown.

22    THE COURT:  Well, who was there when they

23  appeared before Judge Brown?  Were you there?

24    MS. RUDDY:  Yes, I was, Judge.

25    THE COURT:  Was anything mentioned about whether



21

1   the two to four on the attempted bail jumping was going to

2   be consecutive or concurrent?

3           MS. RUDDY:  I don't recall Judge Brown

4   addressing the issue of concurrent versus consecutive

5   time.  He indicated on the record that based on

6   everything, that he would keep his promise of imposing a

7   two to four sentence after the imposition of sentence on

8   this federal matter.

9           THE COURT:  Well, this is now, as an infamous

10  Broadway show called, "a puzzlement."

11          Do you know that show, Mr. Schoer?

12          MR. SCHOER:  Yes, Judge, *Fiddler on the Roof*, I

13  think I heard it referred to.

14          THE COURT:  No, it is not.  It is not.  It is

15  *The King and I.*

16          MR. SCHOER:  *The King and I.*

17          THE COURT:  Never mind *Fiddler on the Roof.*

18  Where did you get that from?

19          MR. SCHOER:  Because you referred to *Fiddler on

20  the Roof* before.

21          THE COURT:  Did you ever hear of Yul Brenner?

22  You wouldn't know, you're too young to know about that.

23  Only the marshals would know about that.

24          THE DEFENDANT:  What is it about Yul Brenner?

25  You don't like Yul Brenner?

22

1          THE COURT:  I like Yul Brenner.  He looks like

2    you somewhat.

3          But now I got to figure this out, though.  How

4    am I going to do that?

5          If I call Judge Brown, would he know?

6          MS. RUDDY:  I don't know, Judge.

7          THE COURT:  You don't know?  Let's get Judge

8    Brown on the phone.  Let's talk to him.  I mean I want to

9    know.  Don't you?

10          THE DEFENDANT:  Sure.  Give me the number, I'll

11    dial it.

12          THE COURT:  You stay right there, we'll dial.

13          What is the number for Judge Brown?

14          MS. RUDDY:  Judge, I believe his chambers is

15    area code 516-571-1488.

16          THE COURT:  Good.

17          MS. RUDDY:  I have dialed it a few times.

18          THE COURT:  Madam deputy, do you want to get him

19    for me, please?

20          (There was a pause in the proceedings.)

21          Hello, this is Judge Spatt calling from the

22    Federal Court in Central Islip.

23          VOICE ON PHONE:  How are you?

24          THE COURT:  Good.  How are you?

25          Is Judge Brown around?

23

1     VOICE ON PHONE:  He is actually on the bench.

2     Would you hold on one second, please?

3     THE COURT:  Would you get him?

4     VOICE ON PHONE:  Sure.  Would you hold on?

5     THE COURT:  Thank you.

6     (There was a pause in the proceedings.)

7     JUDGE BROWN:  Hello.

8     THE COURT:  Jeff?

9     JUDGE BROWN:  Hi, Judge.  How are you?

10     THE COURT:  How are you?

11     I have a question for you.  I am in the middle

12     of a guilty plea with Joseph Pistone.  It is a federal

13     case.  You're on the speaker phone and everybody is

14     hearing what we're saying.

15     JUDGE BROWN:  Yes.

16     THE COURT:  Mr. Pistone is about to take a plea

17     in a superseding indictment; count one, conspiracy,

18     racketeering conspiracy, including a murder conspiracy and

19     an arson conspiracy involving this Have-a-Home Kennel in

20     Old Brookville.

21     JUDGE BROWN:  Right.  I have before me an arson

22     in the second degree which involves that same count.

23     THE COURT:  I understand that if he pleads

24     guilty to the count before me, that the people are going

25     to dismiss this indictment?

24

1    JUDGE BROWN:  Yes.  That is what they told me.

2    THE COURT:  Now also, he pled guilty to another

3    charge, attempted bail jumping?

4    JUDGE BROWN:  That's right.

5    THE COURT:  That sentence is going to be an

6    indeterminate term of not less than two, nor more than

7    four years?

8    JUDGE BROWN:  Okay.  I have a commitment on

9    that.

10    THE COURT:  The point I'm trying to find out so

11    that he would know and understand before he pleads guilty

12    here; is that two to four consecutive to my sentence, or

13    concurrent to my sentence?

14    JUDGE BROWN:  Well, I didn't say anything,

15    because I didn't expect that to happen.  Because if I

16    tried the case -- because he was out on bail at the time

17    he allegedly committed the arson, I would have had to give

18    him consecutive time.  However, now that my case is

19    dismissed, I was not going to say anything because it is

20    just a two to four commitment, which I was going to

21    sentence him.

22    THE COURT:  Well, we have to know.  I mean

23    somebody has to know.

24    I don't want to put you on the spot or anything,

25    but he is going to have to know; either you can't tell him

ELLEN S. COMBS, CSR
Official Court Reporter

25

1   whether it is two to four consecutive, or concurrent, or

2   it is consecutive, or it is concurrent, one or the other,

3   I mean, so he knows.  I want him to know all these facts

4   before he pleads guilty.

5           JUDGE BROWN:  Well, I don't know if I'm

6   statutorily prohibited at this point.  I have to look at

7   the statute.

8           THE COURT:  So you really don't know if it is

9   going to be consecutive or concurrent?

10          JUDGE BROWN:  I was just going to say, I was

11  under the understanding that perhaps -- that this sentence

12  would have merged with the federal.

13          THE COURT:  But you don't know that?

14          JUDGE BROWN:  I don't know that.  Somebody

15  mentioned that, and I thought perhaps, you know --

16          THE COURT:  Well, is it possible to find out

17  about that, or is it not?  How do we find out, if we ever

18  find out?

19          JUDGE BROWN:  Well, the only thing I can do at

20  this point, I can look at the statute and see exactly what

21  it says.

22          THE COURT:  I don't want to make you make a

23  decision that you have to exercise your discretion on.

24  That is not what I'm calling about.

25          JUDGE BROWN:  Right.

ELLEN S. COMBS, CSR
Official Court Reporter

26

1      THE COURT:  If you have discretion, then I'm

2  going to have to tell Mr. Pistone, who is listening to

3  this, that you have the discretion to do this.  It is only

4  if you're, if you either by agreement or by statute are

5  compelled to give him consecutive, or you're going to give

6  him consecutive.

7      JUDGE BROWN:  I don't think I would, you know,

8  give consecutive, be compelled to give consecutive.  I

9  don't think so, because if my case is dismissed I don't

10  think I would be compelled.

11      And what is the commitment that you're going to

12  give him?

13      THE COURT:  Well, I don't make any commitment.

14      JUDGE BROWN:  I didn't realize that.

15      THE COURT:  I can't make any commitment.  But

16  under this plea agreement that has been signed, and that

17  we're working on, he has waived his right to appeal any

18  sentence of 240 months or less, 20 years.

19      JUDGE BROWN:  I would think that because he has

20  good time in already, I mean at least pretty close to it,

21  because he has been -- bail was set, and through my

22  commitment -- and my inclination would have been not to

23  require, be required to give him consecutive.  It would

24  have been concurrent.

25      THE COURT:  Yes, but the question is; are you

27

1    required or not?  That you have to look into?

2              JUDGE BROWN:  If you want to hold on, I'll see

3    if I can get hold of my law secretary to look at the

4    statute.

5              THE COURT:  That would be very nice, if you do

6    that.

7              JUDGE BROWN:  Will you hold on a second?

8              MR. SCHOER:  Judge, I believe that Judge Brown

9    is under a misconception.

10             JUDGE BROWN:  Hold on a minute.

11             MR. SCHOER:  As far as I understand -- I'm Gary

12   Schoer, I'm Mr. Pistone's counsel here in the Federal

13   Court.

14             As far as I understood, the bail jumping was not

15   -- the arson was not committed while he was on bail for

16   that.  That caused the bail jumping, the bail jumping

17   occurred during the course of the arson case.

18             JUDGE BROWN:  He was in the middle of hearings.

19   It was before Judge Kowtna in the middle of hearings.

20             MR. SCHOER:  Right, so he was not, I don't

21   believe, and if I understand the law correctly -- I don't

22   believe that it would be, it would be required to be

23   consecutive, because he was not on bail when the arson

24   occurred.

25             THE COURT:  Well, is it possible for you to

ELLEN S. COMBS, CSR
Official Court Reporter

28

1   check on this?

2          JUDGE BROWN:  I'll do it right now, if you want

3   to hold on a second.

4          THE COURT:  Sure, we'll hold.

5          JUDGE BROWN:  Okay.

6          (There was a pause in the proceedings.)

7          THE COURT:  Where are you supposed to be, in

8   Brooklyn, Mr. Schoer?

9          MR. SCHOER:  I believe.

10          THE COURT:  You're not going to be there.  We're

11   going to break for lunch.

12          MR. SCHOER:  Judge Gold at two o'clock.

13          THE COURT:  At two o'clock?

14          MR. SCHOER:  And it's a civil trial where the

15   government has an expert witness that they're calling at

16   two o'clock.

17          THE COURT:  Do you have Judge Gold's telephone

18   number?

19          MR. SCHOER:  No, I don't, Judge.

20          THE COURT:  What is the name of the case?

21          MR. SCHOER:  It's Alberti against the United

22   States.

23          THE COURT:  You represent Alberti?

24          MR. SCHOER:  The plaintiff, yes.  It's a civil

25   case.

29

1          THE COURT:  And you say the government is

2   bringing an expert in?

3          MR. SCHOER:  Yes, a doctor.  We had testimony

4   yesterday, and we were continuing today.

5          THE COURT:  That is a bench trial?

6          MR. SCHOER:  It's a bench trial.  I also have at

7   1:30, and I still haven't gotten confirmation, a plea in

8   front of Magistrate Borelski.

9          THE COURT:  You better call Judge Borelski.

10          MR. SCHOER:  I don't know if that was set for

11   1:30 or after five.

12          THE COURT:  How do you do all of these things,

13   Mr. Schoer?

14          MR. SCHOER:  We were supposed to be here at

15   nine, so I thought I was going to be able to do these

16   things.  And I don't know how I do it.

17          THE COURT:  But right now this takes priority.

18          MR. SCHOER:  I'm sure.

19          THE COURT:  So you worry about everything else

20   later.

21          MR. SCHOER:  And I appreciate your Honor making

22   the call.

23          (There was a pause in the proceedings.)

24          JUDGE BROWN:  Judge Spatt?

25          THE COURT:  Yes.



30

1    JUDGE BROWN:  Okay, I have the section in front

2    of me, and I'm going to read it to you.  And from my

3    reading it indicates to me that I do not have to give

4    consecutive time.

5         I'm reading from Penal Law Section 70.25, 2-C.

6         When a person is convicted of bail jumping in

7    the second degree as defined in Section 215.56 --

8    THE COURT:  You have to slow down a little bit.

9    I want you to do that again, please.

10   JUDGE BROWN:  Certainly.

11        When a person is convicted of bail jumping in

12   the second degree, as defined in Section 215.56, and

13   called bail jumping in the first degree as defined in

14   Section 215.57 -- the defendant pled guilty to bail

15   jumping in the second degree committed after arraignment,

16   and while released on bond or bail in connection with a

17   pending indictment or information charging one or more

18   felonies, at least one of which he is subsequently

19   convicted, and if an indeterminate sentence of

20   imprisonment is imposed in each case, such sentences shall

21   run consecutively.

22        It goes on to say -- provided, however, that the

23   Court may in the interests of justice order a sentence to

24   run concurrently in a situation where consecutive

25   sentences are required by this subdivision, if it finds

31

1    mitigating circumstances that bear directly upon the

2    matter on which the crime was committed.

3           Section two goes on further, but I can stop at

4    that point.

5           THE COURT:  Good thing.

6           JUDGE BROWN:  What happened here is that:  A, I

7    no longer have a pending indictment in front of me.  Plus

8    he will not have been convicted of the arson in the second

9    degree, which brings me --

10          THE COURT:  And also there are mitigating

11   circumstances involved.

12          JUDGE BROWN:  That may be too.  I don't know

13   what the mitigating circumstances provision means in that

14   section, but if the People dismiss the indictments before

15   me, then obviously there would not be convictions from

16   that, and I am not required to give a consecutive

17   sentence.

18          THE COURT:  You mean dismiss the indictment for

19   arson?

20          JUDGE BROWN:  Yes, well they will dismiss the

21   indictment before me.

22          THE COURT:  That was the underlying crime.

23          JUDGE BROWN:  Right.  He was out on bail at the

24   time.

25          THE COURT:  Now I want to make it clear, Judge



32

1    Brown.  I'm not asking you to make a decision on a

2    discretionary matter like this.  I mean it is just not

3    fair for me to do that.  But I just want to know, I want

4    Mr. Pistone and his lawyer to know what the possibility,

5    probabilities or certainties are.

6                JUDGE BROWN:  Well, that was the section that I

7    would be guided by at the time.  And of course if the case

8    is tried before me, and if there was a conviction, this

9    statute tells me I must give consecutive time, unless

10   there are mitigating circumstances.

11               However, at this point if the people dismiss the

12   indictment for arson in the second degree which is

13   presently pending before me, there will be no underlying

14   charge before me.

15               THE COURT:  So therefore, with reasonable

16   certainty, based on that you would sentence to concurrent

17   time?

18               JUDGE BROWN:  That's correct.

19               THE COURT:  Okay.

20               Any other questions, Mr. Schoer?

21               MR. SCHOER:  No, Judge.

22               THE COURT:  Mr. Miskiewicz?

23               MR. MISKIEWICZ:  No, your Honor.

24               THE COURT:  Judge Brown, thank you very much.

25               JUDGE BROWN:  You're welcome.

33

1          THE COURT:  You have been responsive and

2     helpful.  I really appreciate it.

3          JUDGE BROWN:  No problem at all.

4          THE COURT:  Thanks a lot.

5          JUDGE BROWN:  You're welcome.  Bye now.

6          THE COURT:  Bye.

7          (There was a pause in the proceedings.)

8          THE COURT:  Excuse me, I have to talk to --

9     Judge Gold is very unhappy.

10          THE DEFENDANT:  Take your time.

11          (A recess was taken.)

12          THE COURT:  Okay, I have to get you out as soon

13     as possible, which means we're going to work through

14     lunch.  You can have lunch later.

15          THE DEFENDANT:  I have all of the time in world.

16          THE COURT:  Is that all right with you,

17     Mr. Marshal?

18          A VOICE:  Yes.

19          THE COURT:  All right now, it appears then that

20     the indictment for arson in the state court is going to be

21     -- where is the assistant district attorney, where did she

22     go?  Come on up here.

23          We're going to swear you in as a special

24     assistant United States attorney very shortly.

25          MS. RUDDY:  Thank you, Judge.  That's great.

1          THE COURT:  Now it appears, Mr. Schoer, that the

2    indictment in the state court, in the County Court, Nassau

3    County, before Judge Jeffrey Brown is going to be

4    dismissed on Monday, or will be dismissed when I sentence

5    him.

6          MS. RUDDY:  That's correct, your Honor.

7          THE COURT:  That is the agreement.  It also

8    appears that probably the sentence for the attempted bail

9    jumping will be concurrent.  I say, probably, because you

10   heard the conversation I had with Judge Brown.

11         MR. SCHOER:  Yes.

12         THE DEFENDANT:  Yes, sir.

13   BY THE COURT:  (Continuing)

14   Q.   Now Mr. Pistone, did you hear everything that we

15   discussed?

16   A.   Everything.

17   Q.   Are you satisfied with that?

18   A.   A hundred percent, sir.

19   Q.   Are you ready to go ahead based on that?

20   A.   Yes, sir.

21   Q.   Now I can't guarantee it is going to be concurrent,

22   but it sounds that way.

23         Do you understand that?

24   A.   Okay.  Who makes that final decision, you?

25         MR. SCHOER:  Judge Brown.

1    Q.    Judge Brown.

2    A.    Judge Brown, after my sentencing here makes the final

3    decision?

4    Q.    Yes.

5    A.    Okay.

6    Q.    You heard what he said?

7    A.    Yes.

8    Q.    So in other words, now next week when you decide --

9    Well, it is not for sure, I shouldn't have taken the

10   plea -- I'm not going to let you withdraw the plea.

11            Do you understand me?

12   A.    Yes.

13   Q.    You know that he is probably going to sentence you to

14   concurrent, but not absolute at this point.

15            Do you understand?

16   A.    Yes.

17   Q.    Do you want to go ahead with the guilty plea?

18   A.    Yes.

19   Q.    Now you're not going to withdraw the plea if it is

20   not concurrent.

21            Do you understand?

22   A.    Yes.

23   Q.    Okay.

24            THE COURT:  Now what is this agreement?  What

25   does it provide?  Can you tell me, briefly?

ELLEN S. COMBS, CSR
Official Court Reporter

1          MR. MISKIEWICZ:  Briefly, your Honor; the

2   agreement is that if the defendant will plead guilty to

3   count one, racketeering --

4          THE COURT:  Mr. Pistone, listen to this, because

5   I know that you have gone over it, and I know you're an

6   intelligent man.  And I know you got a very good lawyer.

7   And I know he has explained everything to you.  But I want

8   you to listen to it anyway.

9          Go ahead.

10         MR. MISKIEWICZ:  If the defendant pleads guilty

11  to count one of the superseding indictment, Predicate Act

12  One B, and Predicate Act Two; namely the murder conspiracy

13  and arson, that plea will be taken in satisfaction for all

14  other counts in the superseding indictment.

15         The government, as I indicated earlier today,

16  will not bring any further charges or prosecution for the

17  defendant.

18         It is our estimate under the statute --

19         THE COURT:  Before you get to the estimate, is

20  there a statutory maximum penalty term of imprisonment for

21  what he is pleading guilty to now?

22         MR. MISKIEWICZ:  Yes, your Honor.

23         THE COURT:  What is the maximum term of

24  imprisonment for the crimes he is pleading guilty to now?

25         MR. MISKIEWICZ:  Under Title 18, United States

1    Code Section 1963, the maximum term of imprisonment would

2    be 20 years.

3              THE COURT:  We call it 240 months.

4              MR. MISKIEWICZ:  Or 240 months, yes, your Honor.

5              THE COURT:  So that is the max.  Right?

6              MR. MISKIEWICZ:  Correct.

7              THE COURT:  Minimum is zero?

8              MR. MISKIEWICZ:  Correct.

9              THE COURT:  Okay.  And I interrupted you when

10   you said something about estimated something.

11             MR. MISKIEWICZ:  Under the guidelines, under the

12   US sentencing guidelines, your Honor, it is our

13   calculation, our estimated calculation that the base

14   offense level here would be driven by Section 2(a)(1).1,

15   minus a 3 level adjustment for acceptance of

16   responsibility, would bring this to an adjusted offense

17   level.

18             THE COURT:  Would it be a three level reduction?

19             MR. MISKIEWICZ:  Our estimate is that a timely

20   acceptance of responsibility downward adjustment would

21   still be viable at this juncture.  Yes, your Honor.

22             THE COURT:  The government would agree that it

23   is timely, so that it would be a three, rather than a two

24   level reduction?

25             MR. MISKIEWICZ:  Yes, your Honor.

ELLEN S. COMBS, CSR
Official Court Reporter

38

1          THE COURT:  I'm saying all of this for your

2     benefit.

3          THE DEFENDANT:  Thank you.  Say more, please.

4          THE COURT:  No, no.  I want you to listen.

5          THE DEFENDANT:  I need all the help at this

6     time.

7          THE COURT:  I want you to listen to it, because

8     you're going to plead guilty based upon all of these

9     things that we're talking about now.

10          MR. MISKIEWICZ:  Your Honor, given that, and

11     given the defendant's prior criminal history, we estimate

12     --

13          THE COURT:  Hold on one minute, please.

14          (There was a pause in the proceedings.)

15          THE COURT:  Let me interrupt to tell you, Mr.

16     Schoer; I spoke to Judge Gold, and he is going to wait for

17     you.  And he understands the delay.

18          And I spoke -- I didn't speak, but my courtroom

19     deputy spoke to Judge Borelski who will take the plea

20     after five.

21          MR. SCHOER:  That's great, Judge.  Thank you.

22          THE COURT:  This afternoon.

23          MR. SCHOER:  Thank you, Judge.

24          THE COURT:  Go ahead.  I'm sorry for

25     interrupting you.

39

1     MR. MISKIEWICZ:  No problem, your Honor.

2         It is our estimate that under the guidelines,

3     and given the defendant's criminal history which we place

4     at A criminal history category of V, the guideline --

5         THE COURT:  Roman Numeral 5?

6     MR. MISKIEWICZ:  Roman Numeral 5.  The guideline

7     exposure in this case would be a range of 360 months to

8     life.

9         However, because there is a statutory maximum of

10    20 years under Title 18, we believe that the maximum

11    sentence that may be imposed under this plea would be 20

12    years or 240 months.

13        THE COURT:  Did you hear what the prosecutor

14    said?  Is that your view of what this plea agreement is

15    about, Mr. Schoer?

16        MR. SCHOER:  Yes, Judge.

17    BY THE COURT:  (Continuing)

18    Q.   Did you hear what the prosecutor and your attorney

19    just said?

20    A.   Yes, sir.

21    Q.   Now you have a written plea agreement?

22    A.   Yes.  That is what I'm reading from.

23    Q.   Did you read it before?

24    A.   Yes, I did.

25    Q.   And there are things in there you might not have

1    understood.  Correct?

2    A.    Yes.

3    Q.    Did Mr. Schoer explain everything?

4    A.    Yes, this morning.

5    Q.    In his usual careful manner?

6    A.    Sure did.

7    Q.    And now do you understand everything that is in this

8    plea agreement?

9    A.    Yes, I do.

10   Q.    If there is anything you don't understand, I'll be

11   glad to try to explain it to you.

12   A.    Not at all, sir.

13   Q.    All right.  And did you indicate your understanding

14   of the plea agreement, and consenting to be bound by the

15   terms of the plea agreement by signing it?

16   A.    Yes, I did.

17   Q.    And when you signed it, did you read about what --

18   the words above your signature?

19   A.    Did I read the words above my signature?

20   Q.    Yes.  Read it again just to make sure.

21   A.    I have read the entire agreement and discussed it

22   with my attorney --

23   Q.    Wait, slow.

24   A.    I have read the entire agreement and discussed it

25   with my attorney.  I understand all of the terms and am

41

1    entering into it knowingly and voluntarily.

2    Q.    And are you entering into this agreement knowingly?

3    A.    Yes, sir.

4    Q.    Knowing all of the terms?

5    A.    Yes.

6    Q.    And voluntarily?

7    A.    Yes, sir.

8    Q.    No one ever coerced you to do this?

9    A.    No, sir.

10   Q.    Certainly Mr. Schoer wouldn't do that.  Right?

11   A.    No.

12   Q.    That's for sure?

13   A.    No.

14   Q.    Okay, and were there any other promises made to you

15   that are not in this agreement?

16   A.    No, sir, there was not.

17   Q.    By the government?

18   A.    No, there was not.

19   Q.    And that includes the waiver of appeal you discussed

20   before?

21   A.    Okay.

22   Q.    Now Mr. Pistone, I must be certain that you

23   understand the consequences of pleading guilty to these

24   charges.

25           The maximum term of imprisonment by statute is

42

1    20 years or 240 months.

2              Do you understand that?

3    A.    Yes.

4    Q.    The minimum term of imprisonment is zero, so that you

5    will be sentenced to between zero and 240 months.

6              Do you understand that?

7    A.    Yes, I do.

8    Q.    And further, if you are sentenced to 240 months or

9    less, you can not appeal to the United States Court of

10   Appeals.

11             Do you understand that?

12   A.    Yes.

13   Q.    Further, there is a maximum term of supervised

14   release of five years.

15             Do you know what supervised release is?

16   A.    Like parole, sir.

17   Q.    Yes.  And this term of supervised release is a

18   maximum of five years.

19             If you violate any term of supervised release,

20   which means if you commit another crime while you're out

21   on supervised release; if you don't report to the

22   Probation Department; if you move without telling them

23   about it; if you take drugs; or carry a weapon; or

24   anything like that -- if you violate any condition of

25   supervised release, you can be sentenced to an additional



43

1    term of three years or 36 months, without credit for

2    previous imprisonment or time previously served on

3    post-release supervision.

4              Do you understand that?

5    A.    Yes.

6    Q.    There is also a maximum fine of $250,000, or twice

7    the gross profits of the racketeering enterprise.  And I

8    don't know what that is.

9    A.    Right.

10   Q.    That of course depends upon your financial ability to

11   pay.

12             Do you understand that?

13   A.    Yes.

14   Q.    Further, there is restitution.  If victims have been

15   hurt and lose money as a result of these crimes, you got

16   to pay restitution.

17             Do you understand that?

18   A.    Yes.

19   Q.    Now that is also determined by your ability to pay,

20   but it's much more often imposed, even if you do not have

21   a present ability to pay, and have a future ability to

22   pay.

23             Do you understand that?

24   A.    Yes, I do.

25   Q.    And there is further a $100 mandatory special

44

1    assessment.

2                    Do you understand that?

3    A.    Yes.

4    Q.    Now Mr. Pistone, in sentencing you I will have to

5    consider the federal sentencing guidelines that control

6    the Court.

7                    THE COURT:  Have you discussed the federal

8    sentencing guidelines with Mr. Pistone, Mr. Schoer?

9                    MR. SCHOER:  Yes, your honor.

10   BY THE COURT:    (Continuing)

11   Q.    Do you know what the federal sentencing guidelines

12   are?

13   A.    Yes, sir, I do.

14   Q.    What are they?

15   A.    It determines the amount of time you're going to get,

16   your sentence.  And your criminal history is categorized

17   -- to use a big word there.

18   Q.    All right.  Now, the best explanation for the federal

19   sentencing guidelines is by a reporter from the New York

20   Times at the time the guidelines were enacted, and this is

21   what he said:

22                    "The federal guidelines create a point system

23   that add and subtract mitigating and aggravating

24   circumstances depending on the individual's conduct and

25   the circumstances surrounding the case."

1          Now, what I would call the *good factors*, would

2     reduce the point level.  What is a good factor?  Accepting

3     responsibility, pleading guilty.

4          You heard the government say they thought it was

5     a timely acceptance, so you're going to get a three level

6     reduction.

7     A.    Yes.

8     Q.    That reduces the points.

9     A.    Okay.

10    Q.    The less points, the less time.

11    A.    Yes.

12    Q.    And the factors that are bad -- I use that word

13    generally -- you understand?

14    A.    I understand what you mean.

15    Q.    Firearm involvement, victim hurt, and all of that

16    increases the points.  So when it gets to a certain point

17    level, then we go to the chart and we see the number of

18    points factoring in your criminal history, which is V,

19    which is a heavy criminal history.

20    A.    Yes.

21    Q.    You would get the time that I would sentence you to.

22          Now if we do that here, according to the

23    government it is going to end up with an adjusted offense

24    level of 40.  An adjusted offense level of 40 would carry

25    a term of 360 months to life.

46

1           Do you understand that?

2     A.    Yes, sir.

3     Q.    But I have already told you, there is a statutory

4     maximum beyond which I can not go, and they will not go,

5     which is 240 months.

6     A.    Okay.

7     Q.    So it looks like that will probably be the sentence.

8           Do you understand that?

9     A.    Yes, sir.

10    Q.    I want to be sure you knew that, and you understand

11    that.

12    A.    Okay.

13    Q.    Now in connection with the federal sentencing

14    guidelines, you're going to have to report to the

15    probation officer, who will ask you questions about your

16    entire life.  You're going to have to answer these

17    questions.  They are going to ask you about any criminal

18    history, your employment, marriages, divorces, children,

19    sickness, military service, boy scout service, religious

20    activities, and everything else in your life.  And you're

21    going to have to answer those questions.

22          Do you understand that?

23    A.    Yes, I do.

24    Q.    And they are going to draw a report, presentence

25    report.  And they will review all of the sentencing

47

1    guidelines, and all of the factors to come to this offense

2    level and point level and sentencing range.

3            In your case, we know it is going to be more

4    than 240 months, but there is a statutory maximum.

5            Follow me?

6    A.    Yes.

7    Q.    Now within a couple of months you and your attorney

8    will get copies of this presentence report, and you can

9    object to it say that there are mistakes made.  And

10   Mr. Schoer will bring that to my attention.

11           And generally I will have to sentence within the

12   guideline range, except where there is a statutory maximum

13   of 240 months.

14   A.    Yes.

15   Q.    So it looks like that is what is going to happen.  I

16   can't assure you of that, but that is what is going to

17   happen.

18           Do you understand that?

19   A.    Yes.

20   Q.    Now at the time of your sentencing, your fine

21   attorney will make a recommendation to me, and perhaps the

22   prosecutor may make a recommendation in accordance with

23   this plea agreement.  He is bound by the terms of this

24   plea agreement.

25           I will listen carefully to whatever they say,

48

1    but you must clearly understand that the final

2    responsibility for sentencing you is mine alone.

3    A.    Okay.

4    Q.    And while I may be persuaded by your attorney, I may

5    also view the case differently, and not impose the

6    sentence he recommends.  I may impose a higher one.  No

7    one can promise you what sentence the Court will impose.

8    Is that clear?

9    A.    Yes.

10   Q.    If, after I impose sentence, you or your attorneys

11   think I have not properly followed the law in sentencing

12   you, where normally you could appeal, but now under this

13   plea agreement you have waived your right to appeal if I

14   sentence you to 240 months or less.

15         Do you understand that?

16   A.    Yes.

17   Q.    Do you have any questions you would like to ask me

18   about the charge, your rights, the possible sentence, or

19   anything else related to this matter that may not be

20   clear?

21   A.    No, sir.

22   Q.    Any questions at all?

23   A.    Nothing that I can think of right now, sir.

24         THE COURT:  Mr. Schoer, is there anything you

25   would like me to discuss with your client in further

49

1   detail?

2                MR. SCHOER:  No, your Honor.

3                THE COURT:  Mr. Schoer, do you know of any

4   reason why your client should not enter a plea of guilty

5   to this charge?

6                MR. SCHOER:  No, your Honor.

7                THE COURT:  Are you aware of any viable legal

8   defense to the charge?

9                MR. SCHOER:  No, Judge.

10  BY THE COURT:  (Continuing)

11  Q.    Joseph Pistone, are you ready to plead to count one

12  of the superseding indictment:  Racketeering Act One B,

13  murder conspiracy; Racketeering Act Two B, arson

14  conspiracy?  Are you ready to plead to those charges?

15  A.    Yes, sir.

16  Q.    How do you plead to the charges contained in count

17  one with the predicate acts?

18  A.    Guilty.

19  Q.    Are you making this plea of guilty voluntarily and of

20  your own free will and accord?

21  A.    Yes, I am.

22  Q.    Has anyone threatened or forced you to plead guilty?

23  A.    No, sir.

24  Q.    Other than the agreement with the government which we

25  went over in detail, has anyone made you any promise that

ELLEN S. COMBS, CSR
Official Court Reporter

50

1    caused you to plead guilty?

2    A.    No.

3    Q.    Has anyone made you any promise about the sentence

4    you will receive?

5    A.    No, sir.

6    Q.    No one can make you such a promise, because as I

7    advised you several times, I alone will have to decide on

8    the proper sentence in this case.

9              Do you understand that?

10   A.    Yes, I do.

11   Q.    All right, Mr. Pistone, would you describe briefly in

12   your own words what you did in connection with the crime

13   charged in count one, Racketeering and Racketeering Act

14   One B, murder conspiracy.

15             Tell us in your own words what you did.

16   A.    From about 1994 to 1998 I was associated with a group

17   of individuals and their companies that engaged in

18   racketeering activity.  The enterprise consisted of a

19   group of associated --

20   Q.    You have to slow down.  What did you say?

21   A.    I said the enterprise consisted of a group of

22   associated people and companies that worked for and under

23   the protection of members of the Columbo crime family of

24   La Cosa Nostra.  This is the same group identified in the

25   indictment as the "Galasso-Misseri Crew"

c 04 08 10:15a                                                                                          p.1
Case 2:08-cr-00655-JS     Document 388-2     Filed 06/08/12     Page 51 of 60 PageID #:
2275

51

1    Q.    And what did you do in connection with this

2    enterprise, and this group, and this conspiracy?

3    A.    As members of that enterprise, and as a part of a

4    pattern of racketeering activity, I committed the

5    following:

6            In August of '94 together with others, including

7    other members of the enterprise, I conspired to murder

8    Louis Dorval.

9    Q.    And was he murdered?

10   A.    Yes.

11   Q.    How was he murdered?

12   A.    He was shot and killed.

13           THE COURT:  Is that satisfactory for that

14   particular act?

15           MR. MISKIEWICZ:  The predicate act set forth,

16   overt act in furtherance of that conspiracy, your Honor --

17   they are in paragraphs 23(a) through 23(d) of the

18   superseding indictment on pages 10 and 11.  And I don't

19   know that there has been any allocution thus far to

20   Mr. Pistone's involvement in any of those overt acts.

21   BY THE COURT:   (Continuing)

22   Q.    All right, do you see the overt acts set forth on

23   page 11, top of the page?  What about those overt acts,

24   Mr. Pistone?

25   A.    Yes, sir.  Would you like me to tell you, sir?

1    Q.    Yes.

2    A.    I then attempted to dispose of the body by loading it

3    into a large plastic Tuff Bin toolbox.

4    Q.    T-u-f-f B-i-n toolbox?

5    A.    Yes, sir.

6    Q.    What happened with the toolbox?

7    A.    It was then dumped into the Atlantic Ocean.

8    Q.    That was in August of 1994?

9    A.    Yes, sir.

10   Q.    Where was that?

11   A.    Pardon?

12   Q.    Where did this happen?

13   A.    Long Island, sir.

14   Q.    In Long Island?

15   A.    Yes.

16   Q.    What part of Long Island?

17   A.    Fire Island, sir.

18   Q.    Fire Island.

19              THE COURT:  Okay, anything else on that?

20              MR. MISKIEWICZ:  Your Honor, I still think that

21   the allocution isn't sufficient insofar as the defendant

22   has basically said he disposed of the body, or that it was

23   disposed of.

24              I'm not even sure if it was in the passive,

25   which theoretically he could be an accessory.

53

1  BY THE COURT:  (Continuing)

2  Q.   Well, how was he killed then?

3  A.   He was shot and killed.

4  Q.   Who did that?

5  A.   I did.

6       MR. MISKIEWICZ:  Nothing further.

7  Q.   Now what about the Racketeering Act Two, arson

8  conspiracy?  That is in paragraph 24 and 25, Mr. Pistone.

9  A.   On February 15th of 1998, together with others,

10  including other members of the enterprise, I knowingly,

11  intentionally, and maliciously attempted to burn down and

12  destroy, and conspired to burn down and destroy the

13  Have-a-Home Kennel.

14  Q.   Have-a-Home?

15  A.   Yes, sir.

16  Q.   That is in Old Brookville, New York?

17  A.   Yes, sir.

18  Q.   And that was about, on or about February 15th, 1998?

19  A.   Yes, it was.

20       THE COURT:  Anything else on that?

21       MR. MISKIEWICZ:  No, your Honor.

22       THE COURT:  Based on the information given to

23  me, I find that the defendant, Joseph Pistone, is acting

24  voluntarily.  That he fully understands the charges, his

25  rights, and the consequences of his plea.

54

1           There is, moreover, a factual basis for the plea

2    and all parts of the plea.  I therefore accept the plea of

3    guilty to count one, Racketeering Act One B, murder

4    conspiracy; Racketeering Act Two B, arson conspiracy.

5           As I told you, Mr. Pistone, you will be

6    interviewed by the probation officer who is signed to this

7    case.  You are directed to cooperate fully with the

8    probation officer to help insure the speedy production of

9    the presentence report.

10          This sentence will take place on October 26th,

11   2001, at 10:30 a.m.

12               MR. SCHOER:  Is that the earliest possible date?

13               THE COURT:  Do you want an earlier date than

14   that?

15               MR. SCHOER:  Mr. Pistone would like the earliest

16   possible date.

17               THE COURT:  Well, I'm thinking about when the

18   presentence report -- if he sees the probation officer as

19   soon as possible --

20               THE DEFENDANT:  Yes, sir.

21               MR. SCHOER:  Well, he is incarcerated.

22               THE COURT:  The Probation Department said they

23   need a minimum of eight weeks.  Maybe we'll ask them to

24   make it faster in this case, make it a couple of weeks

25   faster.

55

1      MR. SCHOER:  Eight weeks would put us into

2  September.

3      THE COURT:  They have to go through the NYSIIS

4  report, and the whole criminal history.  It is going take

5  awhile.

6      MR. SCHOER:  What was the date your Honor

7  suggested?

8      THE COURT:  October 26th.  I think that is about

9  as soon as we can get it.

10      MR. MISKIEWICZ:  Your Honor, again what was the

11  time?

12      THE COURT:  10:30 am, October 26, 2001.

13      The problem is going to be the criminal history,

14  the verification, that they're going to have to verify

15  everything.

16      THE DEFENDANT:  Yes.

17      THE COURT:  But if we can get it done sooner,

18  we'll try.

19      THE DEFENDANT:  Okay.

20      THE COURT:  We'll try.  We can't assure you of

21  that.  Right now it's October 26th, 2001.

22      Anything else at this time, Mr. Miskiewicz?

23      MR. MISKIEWICZ:  Nothing from the government,

24  your Honor.

25      THE COURT:  Mr. Schoer?

ELLEN S. COMBS, CSR
Official Court Reporter

56

1          MR. SCHOER:  Mr. Pistone has asked me to request

2     the minutes of this plea.

3          THE COURT:  Yes, I request that the minutes be

4     transcribed, and be done under the auspices of the

5     Criminal Justice Act.

6          MR. SCHOER:  Thank you.

7          THE DEFENDANT:  Thank you.

8          THE COURT:  Anything else?

9          MR. SCHOER:  No, sir.

10          THE COURT:  This plea allocution is terminated.

11    Thank you very much.

12          MR. SCHOER:  Thanks.

13          THE COURT:  Thank you very much for coming.

14    Give my best to Denis Dillon, will you?

15          MS. RUDDY:  I will, your Honor.  Thank you.

16          It has been a pleasure.

17          (Whereupon the proceedings were concluded.)

18               —        —        —

19

20

21

22

23

24

25

1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3   -----------------------------X
                                          CR 00-76
4   UNITED STATES OF AMERICA,                S E A L E D

5

              v.                    United States Courthouse
6                                   Uniondale, New York

7   JOHN DOE,
                                    February 4, 2000
                Defendant.          2:30 p.m.
8

9   -----------------------------X

10                 TRANSCRIPT OF PLEADING
           BEFORE THE HONORABLE JOANNA SEYBERT
11             UNITED STATES DISTRICT JUDGE

12
    APPEARANCES:
13
    For the Government:        LORETTA E. LYNCH
14                             United States Attorney
                               One Pierrepont Plaza
15                             Brooklyn, N.Y. 11201
                               By:  GARY BROWN, ESQ.
16                                  JOSEPH CONWAY, ESQ.
                                    Assistant U.S. Attorneys
17
    For the Defendant:         WILLIAM WEXLER, ESQ.
18                             816 Deer Park Avenue
                               N. Babylon, N.Y.
19

20

    Court Reporter:           Owen M. Wicker, RPR
21                            100 Federal Plaza
                              Central Islip, N.Y. 11722
22                               (631) 712-6102
                    GOVERNMENT
23                   EXHIBIT
                   3500-PPIST-10
24                 00CR0122(ADS)

25  Proceedings recorded by mechanical stenography; transcript
    produced by computer transcription.

        OWEN M. WICKER, RPR    OFFICIAL COURT REPORTER

```
 1            THE COURT:  Is anyone forcing you or threatening
 2   you to plead guilty?
 3            THE DEFENDANT:  No, ma'am.
 4            THE COURT:  Are you pleading guilty because you
 5   are guilty and for no other reason?
 6            THE DEFENDANT:  Yes, ma'am.
 7            THE COURT:  Can you tell me what you did back in
 8   August of 1994 with respect to the murder of Louis
 9   Dorval -- you have to spell it.
10            Is it Dorval, D-O-R-V-A-L?
11            MR. BROWN:  That's the correct spelling, Judge.
12            THE COURT:  That's the correct spelling?
13            MR. BROWN:  Yes.
14            THE COURT:  So the cooperation agreement should
15   be changed, because there it is D-U-V-A-L.
16            MR. BROWN:  I will take care of that, Judge.
17            THE COURT:  Tell me what you did back then.
18            Essentially this is a charge in which you are
19   being accused of knowing that an offense against the
20   United States had been committed and that -- by someone
21   other than you, knowing that, and that you had actual
22   knowledge of the crime and the person's participation in
23   it, and with that knowledge you in some way assisted the
24   person with a specific purpose or plan to hinder or
25   prevent the person's apprehension, trial or punishment.
```

1          So tell me what you know about the murder of

2     Mr. Dorval, when you knew it, and what, if anything, you

3     did with respect to assisting any person.

4          THE DEFENDANT:  In the summer of '94 I was with

5     my brother Joseph Pistone, myself, and Robert Misseri,

6     M-I-S-S-E-R-I, where we were in my brother's truck, where

7     Louis Dorval was shot in the truck and I helped dispose of

8     the body.

9          THE COURT:  And how did you do that?

10         THE DEFENDANT:  We placed it -- my brother and

11    Robert Misseri placed it in a black tool box, the body in

12    a black tool box, put it back in the truck, and we dumped

13    it in the water.

14         THE COURT:  And what, if anything, did you know

15    about someone committing this murder?

16         MR. BROWN:  Judge, I believe the defendant

17    indicated he was present when the shooting happened.

18         THE COURT:  I'm not certain I heard that, so I

19    want that again.  He said where the person was shot.  I

20    don't know if he just happened on the scene later or what.

21         MR. BROWN:  I understand.

22         (Counsel confers with defendant.)

23         THE DEFENDANT:  I was in the truck at the time

24    when I was driving.  I didn't know what was going on, and

25    Louis Dorval was shot in the back seat.

```
 1              THE COURT:  And he was murdered.

 2              THE DEFENDANT:  Yes, ma'am.

 3              THE COURT:  And you knew that the person who

 4    murdered him was doing it so that person could advance or

 5    increase his standing in an organized crime family.

 6              THE DEFENDANT:  No.  No, ma'am.

 7              THE COURT:  All right.

 8              MR. BROWN:  Judge, could we inquire as to whether

 9    or not he learned that later on?

10              THE COURT:  Did you learn that later on?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  And what, if anything, did you learn

13    later on?

14              THE DEFENDANT:  The reason that he was killed for

15    is a part of an organized crime thing where he was selling

16    drugs and not kicking back to certain people.

17              THE COURT:  All right.  But you didn't obtain

18    knowledge of why the person was killed.  You just knew

19    they were killed.

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Is that sufficient for the

22    Government?

23              MR. BROWN:  May I have a moment, Judge?

24              THE COURT:  Yes.

25              (Counsel confer).
```