Attachment 3

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA       
                                    08-CR-0655
                              :
                                    TRANSCRIPT OF JURY SELECTION
       -against-              :
                                    United States Courthouse
                                    Central Islip, New York
CHRISTIAN TARANTINO,          
                                    April 10, 2012
       Defendant.             :     10:00 a.m.

- - - - - - - - - - - - - - - X

         BEFORE THE HONORABLE ARLENE R. LINDSAY
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:       LORETTA E. LYNCH
                          United States Attorney
                          100 Federal Plaza
                          Central Islip, New York 11722
                          BY:  JAMES MISKIEWICZ
                               SEAN FLYNN
                          Assistant United States Attorneys


For the Defendant:        STEPHEN H. ROSEN, ESQ.
                          100 Almeria Avenue
                          Coral Gables, Florida 33134

                          FRANK A. DODDATO, ESQ.
                          666 Old Country Road Suite 501
                          Garden City, New York 11530


Court Reporter:           Perry Auerbach
                          100 Federal Plaza
                          Central Islip, New York 11722
                          (631) 712-6103

     Proceedings recorded by mechanical stenography.
          Transcript produced by computer.


Perry Auerbach, CSR, RPR
Official Court Reporter

2

1  THE CLERK: Calling 2008 criminal 655, United
2  States of America versus Tarantino. Please state your
3  appearances.
4  MR. MISKIEWICZ: Good morning, your Honor, James
5  Miskiewicz and Sean Flynn for the United States.
6  MR. ROSEN: Good morning, your Honor, Stephen H.
7  Rosen and Frank Doddato for the defendant, Christian
8  Tarantino. Mr. Tarantino is present before the court.
9  MR. DODDATO: Good morning, your Honor.
10  THE COURT: Good morning. Let me make sure that
11  Mr. Tarantino, you understand, that you have the absolute
12  right to have Judge Seybert take care of this jury
13  selection, do you understand, or oversee the jury
14  selection?
15  THE DEFENDANT: Yes.
16  THE COURT: She's going to be the judge who
17  eventually tries this case. But I understand that you've
18  agreed to let me supervise the jury selection. Is that
19  correct?
20  THE DEFENDANT: Correct.
21  THE COURT: All right. I wanted to ask counsel
22  for Mr. Tarantino, I noticed that Judge Seybert made
23  reference during the past jury selection to the
24  defendant's Parkinson's, and had advised the jury that he
25  might from time to time shake. Is that still a problem,

3

or something you want me to tell the jurors at some point?

MR. ROSEN: I think -- Stephen H. Rosen on behalf of Mr. Tarantino -- I think the opening remarks from this court should address the issue of his Parkinson's and the shakes that he has both in his hands and in his legs.

THE COURT: All right. She made sure they understood it was not because of any -- that was based upon a condition and not because he was nervous about what he was actually hearing at trial. That's how she asked it.

MR. ROSEN: Yes, your Honor.

THE COURT: All right. Now, let's just talk for a minute about how we're going to proceed. We have a couple of ideas. One of the things as you know we did yesterday was we prepared the random list so that everybody would have a heads up as to who potentially will be called. I don't have the final random list -- we have that. I have the random list which was circulated yesterday to all counsel.

What I don't know yesterday, because they're still checking in the jurors who were responding to the jury demand, they're still checking those in, so I still don't know which of these jurors have actually appeared here today.

4

1  I did did he tell a call from the clerk's office
2  that one juror that responded to the request for jury
3  service claimed to have MRSA disease and is not supposed
4  to be in the presence of other individuals because it's
5  communicable so they sort of set this person to the side
6  and isolated the individual in some fashion.  I don't know
7  which juror it is, but they wanted the Court's instruction
8  as to what they should do.  So I'm going to excuse that
9  juror unless there's an objection.
10  MR. ROSEN:  No objection.
11  MR. MISKIEWICZ:  No, your Honor.
12  MR. ROSEN:  No objection.
13  THE COURT:  All right.  Now, we have a couple of
14  ways to approach this.  I know how you did it with Judge
15  Seybert.  First of all, is the defendant going to
16  participate in the sidebars?
17  He has a right to do that.
18  MR. ROSEN:  We'll waive that.  Unless there's
19  something of utmost importance we would waive his presence
20  at sidebar, unless I determine that he should be present
21  to make that decision with us we would waive his presence.
22  THE COURT:  All right.
23  Then what I thought we might do is, let me hear
24  from you as to what you think.  You have these
25  questionnaires.  Every question has been asked on the

5

questionnaires, I know you probably have some followup with respect to some of these questions, so I thought while we're waiting for these jurors to all check in, we should go through. We should decide how we're going to approach this. In other words, I'm not going ask every question in the questionnaire and I need some guidance from counsel as to what they seek clarification on.

Give me an idea of how you think I best approach this.

MR. MISKIEWICZ: Your Honor, I would, there are going to be individual followup questions for different jurors. I think right off the bat, though, one thing that was helpful the last time was sort of just making it clear that with the exception of very severe hardships, basically people should not be raising their hands seeking to be excused.

Another issue that did come up generally was the question of if people demonstrated a bias either for or against the government or for or against the defendant but otherwise said they could be fair and impartial and follow the the law, those individuals, I think, generally required some followup voir dire. And that was done I think in open court if it didn't necessitate a sidebar. And finally, we found that there were people who for whatever reason had issues that he didn't want to raise in

                                                                6

1   open court and they were invited to come to sidebar and
2   tell the Court what those issues were.  So those are the
3   general areas that we would suggest should be followed up.
4        And one other thing regarding the hardship, is
5   that the questionnaire estimates trial to be six to eight
6   weeks.  I think that was the original estimate on the
7   first trial in May and nobody really caught it, and
8   changed that estimate.  We've never taken that position.
9   We frankly our order of proof looks to be about eight days
10  of testimony.  So I think somebody says they're going to
11  be -- you know, they've got prepaid tickets in late May,
12  that shouldn't really be an issue.
13       THE COURT:  So can we downgrade that estimate to
14  about two weeks?
15       MR. MISKIEWICZ:  I'd build in an extra week, but
16  three weeks I think is probably the maximum.  Unless of
17  course the defense has a lengthy case, but only they can
18  speak for that.
19       THE COURT:  Mr. Rosen?
20       MR. ROSEN:  It's very difficult for us to
21  estimate.  We've issued subpoenas to quite a few folks.
22       THE COURT:  Calculate --
23       MR. ROSEN:  Probably be at least a day but no
24  more than three.
25       THE COURT:  Okay.  So between the government's

7

```
 1   estimate of 8 and 3 more on top of that, 11, we'll build
 2   in some safe time, three weeks sounds like a pretty good
 3   guess that the point.
 4           MR. ROSEN:  But if you want to add jury
 5   selection through the closing arguments, deliberation,
 6   we're probably looking at a month just to be safe.
 7           THE COURT:  Okay, three to four weeks then.
 8           MR. ROSEN:  Yes, ma'am.
 9           THE COURT:  It still makes a lot easier than 6
10   to 8.
11           Then what I think we might do, since we have an
12   idea now whether it becomes the final list or not, who's
13   going to be brought before us, maybe we ought to pull
14   those questionnaires if you haven't already done that and
15   you can just start telling me what questions you want to
16   follow up on.  Starting with 162, who is the first person
17   on the list.
18           MR. ROSEN:  Judge, perhaps it would be easier
19   if -- the prosecution team and we have agreed somewhat to
20   certain people on that list for cause.
21           THE COURT:  Right.  I have those.
22           MR. ROSEN:  I think perhaps we can just knock
23   out those for cause that we both agreed to, and then raise
24   issues of cause that the government may have that we don't
25   have and that we have that the government doesn't have.
```

8

1    THE COURT: Sounds good to me. Let's start with
2  that then. All right. So starting with the way you folks
3  approached it, you just went to juror number one. Juror
4  number one I presume is 162, questionnaire 162. Is that
5  right?
6    MR. MISKIEWICZ: No, your Honor.
7    MR. ROSEN: Yes. Yes.
8    MR. MISKIEWICZ: You mean the first to be
9  called. I'm sorry, I'm using the juror number -- never
10  mind. Sorry.
11    THE COURT: Correct?
12    MR. MISKIEWICZ: Correct.
13    THE COURT: Okay. So juror number one being
14  questionnaire 162 the defendant challenges for cause and
15  the government does not, so let me have that
16  questionnaire, please. We just got the final list, with
17  no shows. So let's work on that. The jurors who did not
18  respond, the juror noted 19, which questionnaire number 70
19  is not here. Juror number 24 which is questionnaire 242
20  is not here, cross them off the list. Juror 30, which is
21  questionnaire number 50 not here. Juror number 35 which
22  is questionnaire 159, not here.
23    MR. ROSEN: Judge, what was the third one? I'm
24  sorry.
25    THE COURT: You have 19, which is questionnaire

9

1   70, 24 which is questionnaire 242, 30 which is
2   questionnaire 50.
3           MR. ROSEN:  Thank you.
4           THE COURT:  35 which is questionnaire 159.  41,
5   questionnaire 79.  49, which is questionnaire 89, no
6   shows.  Juror number 51, which is questionnaire number 8,
7   juror 58, questionnaire 221.  Juror 73, questionnaire 4.
8   Juror 74, questionnaire 98.  Juror 94, which is
9   questionnaire 95.  And juror 95, which is questionnaire
10  147.  So by this I have 12 no shows out of a count of a
11  hundred, which is a pretty darned good response I have to
12  say.  And I understand that we have as many as 227 jurors
13  downstairs that have checked in so far.  So in case we go
14  through this list there's plenty more jurors behind us.
15  So everybody on the same page right now?  Yes.
16          MR. MISKIEWICZ:  Yes, your Honor.
17          THE COURT:  So let's go on to the challenges
18  then.  So now we have juror number one which is
19  questionnaire 162, the defendant you've challenged that
20  juror for cause.  Do you want to tell me why?
21          MR. ROSEN:  No, we didn't.  If we did, it was a
22  mistake.  I apologize if we did.  I think it it's number
23  two and three we have a problem with, but not number one.
24          THE COURT:  Two is consented to.  Is that right?
25          MR. MISKIEWICZ:  Yes, your Honor.

```
                                                                  10
 1              THE COURT:  Which is questionnaire number 244.
 2              MR. MISKIEWICZ:  Actually, your Honor, I'm
 3   sorry, we're using a different numbering, we're going by
 4   the number that the jurors were given by the clerk's
 5   office.
 6              THE COURT:  Now you've lost me.  Is that a
 7   different number?
 8              MR. MISKIEWICZ:  So if I can just -- just bear
 9   with me.
10              THE COURT:  Juror number 2 is 244.  Have you got
11   that?
12              MR. MISKIEWICZ:  Yes.  The questionnaire that
13   has the number 244 on it, defense said that they would
14   strike for cause.
15              THE COURT:  As did the government.
16              MR. MISKIEWICZ:  We did not agree.
17              THE COURT:  You do not.  Wait a minute.  Then
18   what is your list based on?
19              MR. MISKIEWICZ:  I'm sorry?  What is my list?
20              THE COURT:  Yes.  In other words, you know,
21   you've provided both the Court and the defense attorney
22   with a list of jurors from one through whatever number.
23              MR. MISKIEWICZ:  244.
24              THE COURT:  244.  When you say juror number one,
25   you weren't referring to juror number one on the proposed
```

11

1 list from the -- of jurors that were coming up?

2 MR. MISKIEWICZ: No, your Honor. This was just
3 generated late yesterday. We didn't have access to this
4 until really when we got is this e-mail had late in the
5 day, this is the order they were going to be called up.
6 What we were working on was the number that they put on
7 the top of the jury questionnaire.

8 THE COURT: So now I don't have -- all right.
9 So let's go to -- so juror 162 --

10 MR. MISKIEWICZ: Your Honor --

11 THE COURT: I would like to do this. Because
12 otherwise it's going to get immensely confusing. Let's
13 take that random list that I circulated yesterday which
14 has jurors one through a hundred and next to that
15 numerical lineup is the questionnaire that lines up with
16 that spot.

17 MR. MISKIEWICZ: That's fine.

18 THE COURT: Using that list, why don't you,
19 Mr. Miskiewicz, take a few minutes and line up what the
20 government does or doesn't challenge, because I had done
21 that.

22 MR. MISKIEWICZ: I can do that, when you were
23 saying juror number I was hearing something else, now I
24 understand what you mean. I'll follow along. I'll just
25 indicate as best I can and make sure we are in agreement

```
                                                              12
 1   as to who's striking for cause and who isn't. I've got
 2   the system down now.
 3           THE COURT: All right. So as far as I knew,
 4   there was no challenge from the defense on juror number
 5   one, which is questionnaire 162.
 6           MR. ROSEN: Challenge for cause, right?
 7           THE COURT: Challenge for cause.
 8           MR. ROSEN: Yes.
 9           THE COURT: That's all we're discussing right
10   now, challenges for cause.
11           MR. ROSEN: Yes, your Honor.
12           THE COURT: So was there a challenge from the
13   government?
14           MR. MISKIEWICZ: No, your Honor not on 162 or
15   juror number one.
16           THE COURT: All right. With respect to juror
17   number 2, which is questionnaire 244, defendants challenge
18   that juror for cause.
19           MR. MISKIEWICZ: Yes, your Honor.
20           THE COURT: What about the government?
21           MR. MISKIEWICZ: No, your Honor.
22           THE COURT: So that's one we have to resolve.
23           So what is the basis of the defense challenge on
24   244?
25           MR. ROSEN: Judge, my preliminary note on top is
```

13

1  that he said that the defendant should have the burden of
2  proof, and he should prove his innocence.
3      THE COURT: All right.
4      MR. ROSEN: I would think that that would be a
5  pretty good ground for cause.
6      THE COURT: Where is that?
7      MR. ROSEN: I'm looking for that. Okay. That
8  would be on page 36 of juror number 244's questionnaire,
9  and his response to question 52, do you agree with the
10 rule of law, he says no, and explain, defendant has to
11 prove his innocence against the charges.
12     THE COURT: All right. I'll examine him about
13 that. I'll reserve ruling on this. Because he also says
14 that he would accept the rule of law.
15     MR. ROSEN: And if we look at 52 B, he says the
16 defendant should testify and doesn't agree with the
17 defendant not testifying.
18     THE COURT: All right. I'll examine him on that
19 issue. All right. So on with what we call juror number
20 two, there's still an outstanding defendant challenge,
21 decision reserved, and it pertains to page 36.
22     MR. ROSEN: And see, that type of individual,
23 Judge, obviously I don't know him by name, I would not
24 want him examined in an open forum.
25     THE COURT: All right. We'll do that at the

14

1  sidebar. All right. Juror number three, which is number
2  187, the defendant challenges. Did the government?
3    MR. MISKIEWICZ: No.
4    THE COURT: So what's the basis of the challenge
5  on 187?
6    MR. ROSEN: Yes. Juror number 187, which would
7  be number 3, he is a law enforcement and revenue
8  collection, he works for the New York State Public
9  Authority, he has a lot of cases pending, he gets
10 subpoenaed, he has to appear. He seems to have --
11   THE COURT: I'll inquire of him.
12   MR. ROSEN: -- about obvious bias towards law
13 enforcement because he is one. And he said he's been a
14 witness in grand jury. So he's familiar with the grand
15 jury system. These are arrests that he makes as part of
16 his occupation. So he's familiar with the grand jury
17 system. He's familiar with the prosecution presenting --
18 only the prosecution presenting cases to the grand jury,
19 et cetera, et cetera, et cetera. These are for causes,
20 and this would be another individual that I would ask for
21 a sidebar as opposed to open court.
22   THE COURT: Okay. So with respect to juror 187,
23 the defendant challenge, decision reserved, sidebar
24 review. All right. Juror number 4, which is 204.
25   MR. MISKIEWICZ: Your Honor, that was a juror

15

1   that the government suggested should be struck for cause
2   based on hardship. She indicated that she has child care
3   issues and she has five cancer treatment tests, she's a
4   cancer survivor, she has five tests scheduled for April
5   27, which would be the second day of trial -- no, sorry,
6   it would be right in the beginning of trial. So on that
7   ground we thought just on that alone, she'd be a good
8   candidate to be excused.
9           THE COURT: What is the position of the
10  defendant?
11          MR. ROSEN: We agree.
12          THE COURT: All right. So that's juror number
13  four, number 204 is on consent.
14          Juror number five, which is questionnaire 124, I
15  know the defendant has challenged. Where does the
16  government stand on that one?
17          MR. MISKIEWICZ: Your Honor, we both agreed that
18  this juror should be struck for cause. Just for the
19  record we indicated that it was based upon answers to
20  question 43, 44, 46, those have to do with moral, ethical,
21  religious inability to judge, there's also a hardship
22  issue on question number 64. And 46 she indicated she
23  would have a -- I think it's a she -- he or a she, stated
24  due to the nature of the crime I feel that an anxiety
25  level would prove too much for me to function during the

16

1  trial, and would therefore make it difficult for me to
2  render a thoughtful verdict. I also feel that medication
3  prescribed for anxiety would not be helpful in thinking
4  clearly. On question 48 as to whether or not she could
5  follow the oath whether it would be a difficulty in
6  following the oath she said yes, I would be afraid if the
7  defendant would find out what was, something would happen
8  to me or my family, et cetera.
9            THE COURT: All right. She's excused on
10 consent?
11           MR. ROSEN: Yes, your Honor.
12           THE COURT: All right. Juror number six, with
13 questionnaire 53. Does the government challenge that one?
14 Because the defendant did not.
15           MR. FLYNN: Your Honor, the government
16 challenged juror number 53 based on --
17           THE COURT: No. Let's not change the
18 terminology. Questionnaire 53 is juror number 6.
19           MR. FLYNN: Based upon his or her responses to
20 question number 47 A, which is a religious question, in
21 which she indicates that she's not sure if she can set
22 aside her religious beliefs in connection with this trial,
23 as well as her inability do put aside her views, her
24 negative views of law enforcement, which is question 32
25 sub-part C her inability to follow the Court's

17

1 instruction.

2 THE COURT: 32 says what?

3 MR. FLYNN: In question 32, your Honor, the
4 parties asked the anonymous jury whether they have any
5 beliefs concerning law enforcement in general. This
6 particular prospective juror indicated that she did. That
7 law enforcement has a tendency to abuse its power.
8 They're not fair and trustworthy, and that specifically in
9 question 32 C she said she would be unable to put aside
10 those feelings. And be fair and impartial.

11 THE COURT: All right. I will examine her, do
12 you want me to do that at sidebar?

13 MR. FLYNN: Yes, your Honor. Thank you.

14 THE COURT: Decision reserved. Sidebar
15 examination.

16 MR. ROSEN: I should note for the record, can
17 judge, that even though the woman said that she'd have
18 difficulty, when asked if she had any bias or prejudice
19 towards law enforcement she said no. She also indicated
20 that her religious beliefs would not affect her ability to
21 render a not guilty or a guilty verdict. So --

22 THE COURT: I'll follow up and see to get some
23 clarification.

24 MR. FLYNN: Your Honor, while we are
25 supplementing the record, the juror indicated she would --

18

1  in question 44 be unable to set aside both her sympathies
2  for individuals with Parkinson's disease, and 44 is
3  regarding whether or not a victim had suffered from mental
4  illness. I apologize --
5     THE COURT: So what does that have to do with
6  this?
7     MR. FLYNN: The victim in this case, there may
8  be testimony that an individual who was a victim in this
9  case was suffering from mental illness, and she indicates
10 that that fact would prevent her from rendering a fair and
11 impartial verdict in this case. That may be another line
12 of inquiry for the Court to go into.
13    THE COURT: The victim will be suffering from
14 mental illness?
15    MR. FLYNN: There will be testimony at trial to
16 suggest that, your Honor, yes.
17    THE COURT: Okay. The defendant has question
18 number 53? Okay, is that it?
19    Moving on to 7, which is item 226.
20    MR. MISKIEWICZ: Your Honor, neither party
21 challenged for cause.
22    THE COURT: Number 8 which is questionnaire 51.
23    MR. MISKIEWICZ: Your Honor, the government
24 challenged for cause, actually both the defendant and the
25 government challenged this juror number 8, with