# EXHIBIT "H"

Case 2:08-cr-00655-JS   Document 189   Filed 03/13/11   Page 1 of 6 PageID #: 847



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

March 13, 2011

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
1034 Federal Plaza
Central Islip, New York 11722

   Re:  United States v. Christian Tarantino
     Criminal Docket No. 08-655 (JS)

Dear Judge Seybert:

  The government submits this letter to notify the Court of a possible attorney conflict of interest in the above-captioned case. The government respectfully requests that the Court conduct an appropriate inquiry to determine whether a conflict exists, and if so, whether it is waivable. The government's position is that although an actual conflict of interest might exist, it is waivable. Additionally, should the Court determine that the conflict can be waived, the government requests that the Court conduct an inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). Due to the upcoming trial date, the government requests that the Court hold a status conference this week, with the defendant Christian Tarantino present, to address this issue.

### BACKGROUND

  Because the Court is familiar with the facts of this case, the government will not repeat those facts here. This section provides facts relevant to the Curcio issue only.

  The defendant is currently represented by James Froccaro, Jr., Esq., Michael Rosen, Esq. and Diarmiud White, Esq. Mr. Froccaro has represented the defendant in this case since the arraignment, on September 24, 2008. Mr. White and Mr. Rosen joined the defense team in July 2010 and October 2010, respectively.

Count Two of the above-captioned Indictment charges the defendant, together with others, with the obstruction of justice murder of Louis Dorval.

On November 4, 2010, the government filed a letter under seal, advising defense counsel of information provided by a confidential source ("CS") regarding the murder of Dorval. A copy of that letter is attached as Exhibit A. (Exhibit A will be filed under seal). As stated in the government's November 4, 2010 letter, in 1995, the CS reported, among other things, that he heard that "Sal" Cutaia of the Luchese family sent a message to Eric Curcio and Joseph Monteleone, Jr. that Dorval was going to be killed by the Luchese family for their own reasons. Exh. A at 2. In 2007, the CS further advised, in sum and substance, that he had previously heard that "Sal" Cutaia was one of Dorval's killers and that "Sal" Cutaia's father, "Danny" Cutaia, claimed his son "Sal" had "done a beautiful piece of work with that kid Louie." Id.

The undersigned prosecutors have recently learned that Mr. Froccaro currently represents Salvatore Cutaia, also known as "Sal," in another case in the Eastern District of New York, which is captioned United States v. Nicholas Bernardo, et al., 10 CR 0010 (ENV). The docket sheet for that case reflects that Salvatore Cutaia pleaded guilty to a Hobbs Act robbery conspiracy on January 13, 2011. (See Docket Entry No. 163). Moreover, Mr. Rosen represents Salvatore Cutaia's father, Domenico Cutaia, also known as "Danny," in that same case. Mr. Froccaro also represented Salvatore Cutaia in an earlier case in the Eastern District of New York, captioned United States v. Domenico Cutaia, et al., 08 CR 97 (BMC). On September 23, 2009, Salvatore Cutaia was sentenced to twelve months incarceration for his participation in an illegal gambling conspiracy. (See Docket Entry No. 235).

**DISCUSSION**

A.  **Applicable Law**

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to counsel unimpaired by conflicts of interest. See United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). In other words, "[a] defendant has a right to an attorney who can make strategic and tactical choices free from any conflict of interest." Malpiedi, 62 F.3d at 469. Additionally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v.

United States, 486 U.S. 153, 160 (1988). Where there is even the possibility of a conflict of interest, the trial court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also Wood v. Georgia, 450 U.S. 261, 272-73 (1981).

An attorney has a potential conflict of interest "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." See United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citing Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980) (Marshall, J., concurring in part and dissenting in part)). By contrast, "[a]n attorney has an actual . . . conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (internal quotation marks omitted). "In most cases when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice." United States v. Schwarz, 283 F.3d 76, 95 (2002).

However, if the Court finds that a conflict exists, and that "the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation . . . the attorney must be disqualified, regardless of whether the defendant is willing to waive his right to conflict-free counsel." Schwarz, 283 F.3d at 95-96; United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995). If the conflicts are of a kind that a rational defendant could knowingly and intelligently desire the conflicted attorney's representation, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153.

In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of his or her right to representation by an attorney who has no conflict of interest; (ii) advise the defendant of the dangers arising from the particular conflict; (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to

> seek advice from independent counsel; and (iv) determine through questions that are likely to be answered in narrative form whether the defendant understands the risks of representation by his or her present counsel and freely chooses to run them.

Perez, 325 F.3d at 119; United States v. Iorizzo, 786 F.2d 52, 59 (2d Cir. 1986); see also Curcio, 680 F.2d at 888-90. By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

In United States v. Perez, the Second Circuit noted that there has been a "very narrow category of cases" in which it has held attorney conflicts unwaivable. 325 F.3d at 126. The court pointed to United States v. Fulton, 5 F.3d 605, 609-10 (2d Cir. 1993), where an unwaivable conflict was found when a co-conspirator accused the defense attorney of engaging in criminal activity related to the charge for which the defendant was standing trial. Perez, 325 F.3d at 126. The Perez court also pointed to United States v. Schwarz, 283 F.3d 76, 91-96 (2d Cir. 2002), where an unwaivable conflict was found in an attorney's large retainer agreement with the Patrolman's Benevolent Association and simultaneous representation of a police officer whose potential defense implicated another police officer. Perez, 325 F.3d at 126-27. In both of these cases, the attorneys had a personal stake in the proceeding — one was motivated by self-preservation and the other by a substantial personal financial interest. Id. The Second Circuit found the conflict in Schwarz unwaivable because it "involved a defense attorney's self-interest that actually conflicted with his client's interests so severely as to permeate every aspect of the representation." Id. at 124.

In Wheat v. United States, 486 U.S. 153, 163-64 (1988), the Supreme Court affirmed a district court's disqualification of an attorney who aimed to represent three conspirators in a drug distribution scheme, while noting that a different district court may permissibly have ruled otherwise. The Court found that at the pretrial stage, the trial court must be given substantial latitude in this inquiry and can overcome the presumption in favor of defendant's counsel of choice even "by a showing for a serious potential for conflict." Id. at 162-63; see also United States v. Kelly, 870 F.2d 854, 857 (2d Cir. 1989).

### B. The Conflict in This Case

In this case, it appears that an actual conflict of interest exists because Mr. Froccaro simultaneously represents both Tarantino and Salvatore Cutaia. Similarly, Mr. Rosen currently represents both Tarantino and Domenico Cutaia. As noted above, the government disclosed to the defense, on November 4, 2010, that a CS reported that he heard that "Sal" Cutaia was one of Dorval's killers and that "Sal" Cutaia's father, "Danny" Cutaia, claimed his son "Sal" had "done a beautiful piece of work with that kid Louie."

Given that Mr. Froccaro and Mr. Rosen represent Salvatore Cutaia and Domenico Cutaia, while they also represent Tarantino, the defendant might claim, in subsequent proceedings (assuming Tarantino is convicted at trial), that Mr. Froccaro and Mr. Rosen provided ineffective assistance of counsel because their loyalty to Tarantino was divided. For this reason, the government respectfully requests that the Court explore whether a conflict of interest exists.

If the Court determines that an actual or potential conflict exists, but that it is of a kind that a rational defendant could nonetheless knowingly and intelligently desire the conflicted attorney's representation, the Court should determine whether the defendant is prepared to knowingly and intelligently waive this conflict of interest and, if so, whether to accept such a waiver. In addition, we respectfully suggest that the Court give Tarantino the opportunity to consult with independent counsel with respect to these matters. See Curcio, 680 F.2d at 890.

Given that the government advised Mr. Froccaro and Mr. Rosen about the information provided by the CS on November 4, 2010, it may very well be the case that defense counsel have already conferred with the defendant regarding this matter.

### CONCLUSION

As described above, the government respectfully requests that the Court conduct an inquiry into the possible conflict of interest present in this case, and if the Court deems the conflicts waivable, the government further requests a Curcio

hearing to determine whether the defendant is willing to give up his right to conflict-free representation.

                              LORETTA E. LYNCH
                              United States Attorney

              By:  <u>/s/Carrie N. Capwell</u>
                    Carrie N. Capwell
                    James M. Miskiewicz
                    Sean C. Flynn
                    Assistant U.S. Attorneys
                    (631) 715-7836/7841

cc:  Counsel of Record (By ECF)
     Clerk of the Court (By ECF; Exhibit A filed under seal)