**EXHIBIT "DD"**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA,    :   CR 08 655

    v.                           :   U.S. Courthouse
                                             Central Islip, N.Y.

CHRISTIAN TARANTINO,         :
                                             TRANSCRIPT OF VOIR DIRE
       Defendant.            :
                                             March 22, 2011
------------------------------X    9:40 a.m.

BEFORE:

    HONORABLE JOANNA SEYBERT, U.S.D.J.


APPEARANCES:

For the Government:   LORETTA E. LYNCH
                     United States Attorney
                     100 Federal Plaza
                     Central Islip, New York 11722
                     By:  JAMES M. MISKIEWICZ, ESQ.
                         CARRIE N. CAPWELL, ESQ.
                         SEAN C. FLYNN, ESQ.
                         Assistants, U.S. Attorney

For the Defendant:    JAMES R. FROCCARO, JR., ESQ.
                     20 Vanderventer Avenue, Suite 103W
                     Port Washington, New York 11050
                         and
                     MICHAEL ROSEN, ESQ.
                     61 Broadway, Suite 2602
                     New York, New York 10006

Court Reporter:       HARRY RAPAPORT, C.S.R.
                     United States District Court
                     100 Federal Plaza
                     Central Islip, New York 11722
                     (631) 712-6105


Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

THE COURT: Please have a seat for a second.

This is what his wife was able to bring in?

Are you comfortable to proceed with that, Mr. Rosen, Mr. Froccaro, Mr. Tarantino?

THE DEFENDANT: Should I not be?

THE COURT: I just asked you the question.

THE DEFENDANT: I'm good.

THE COURT: You are good, all right.

I want to review that we are all ready to proceed and the procedure that has been done in the case.

Obviously I will decide, as I said a moment ago, the 404(b) motion by Friday, and most likely Thursday, and the issue of authenticity, if I get anything in the next couple of days, I will include that in the decision. But that will all be decided.

All these questionnaires were reviewed by you folks last week. And then I made certain decisions on Thursday, and again, yesterday Judge Tomlinson reviewed the questionnaires.

We have 80 jurors coming in today. And tomorrow we have 40 jurors coming in.

If we need more, we may very well pull from other pools of jurors. I'm hopeful we will be able to select a jury from the group we have.

I would also point out that the deputy marshals

1  have made sure that no one comes in here with any kind of
2  electronic devices.
3       The audience will be made aware of that fact.
4       The jurors are permitted to bring their cell
5  phones.  But I will clearly instruct them that they are
6  not permitted to send emails on anything to do with this
7  case.  If they do so, it will be a violation of their
8  oath, and they can face potential penalties.  And I will
9  not get into what the penalties would be.
10      And I will let everyone know they are not to
11 discuss the case or get involved with any aspects of the
12 media, just to make that known.
13      Just to review Rule 24, my general procedure is
14 I examine the individual jurors based on their
15 questionnaire.  I will review with them some trouble spots
16 perhaps.
17      Then, when I think we have 12 jurors who for
18 which there are no for-cause challenges, I will call up
19 counsel and ask you to make your challenges.
20      Generally what happens is we go to sidebar.  And
21 counsel may say this particular juror should be excused
22 for cause, or these are the reasons, or I have some
23 questions as to a particular juror.
24      You tell me what the questions are.  And if I
25 feel they are legitimate and I feel it is important to

1  make further inquiry, I will have the juror come up and I
2  will question the juror, and we will send the particular
3  juror back or excuse the particular juror.
4        My basic method of operation is to engage the
5  juror in a dialogue, not in a rote yes/no, yes/no, so you
6  get an opportunity to examine them.
7        After we are done with the first 12, if you have
8  additional questions let me know and I will do those.
9        Once we have the 12 in place, as you know the
10 defendant gets ten peremptory challenges and the
11 government gets six.
12       Charley has a little chart.  We go back and
13 forth, back and forth, and the government, you go first.
14 And then you work it out so it turns out that you are all
15 set to go.
16       Essentially, you can't stack up your challenges,
17 the peremptories.  If you don't use them on the round in
18 which you are directed to use them, you lose them.  You
19 can't back them up and use them for jurors who are
20 alternates.
21       I'm going to select alternates, and you each
22 have six challenges on the alternates.
23       That is basically it.
24       It is an open box system.  You can go back and
25 forth, whoever you want to challenge.

1          Any questions?
2          MR. FROCCARO: No, your Honor.
3          MR. ROSEN: Judge, I just have one.
4          THE COURT: Yes.
5          MR. ROSEN: One of the things I forgot to
6  perhaps include in the request is that jurors are to keep
7  an open mind until the very, very end of the case.
8          THE COURT: Right.
9          MR. ROSEN: Until your Honor's instructions, of
10 course. And I'm not sure if I saw that specifically in
11 the questionnaire. But jurors should be told that it is
12 going to be a bit of a while, this trial, and not to make
13 up their minds about anything until they hear from your
14 Honor at the end of the case.
15         THE COURT: I generally do all that.
16         MR. ROSEN: Yes, but I didn't see it in the
17 questionnaire.
18         MR. MISKIEWICZ: Your Honor, we would just also
19 ask -- we noticed in a lot of the answers in the jury
20 questionnaires, there were individuals who indicated that
21 they had ethical or moral problems with the death penalty.
22 And we would just ask at some point to be advised that
23 this is not a death penalty case. That might eliminate a
24 lot of questions or requests to come the sidebar.
25         THE COURT: All right.

1  MR. ROSEN: My understanding is that if there is
2  something with a particular juror, your Honor prefers
3  doing it at the sidebar.
4  THE COURT: On death penalty questions?
5  MR. ROSEN: On anything.
6  THE COURT: If there is an issue that it looks
7  like the juror has a particular problem, you know, I'll
8  try to avoid -- I have not reviewed all these
9  questionnaires in detail. But what I will do, usually it
10 was 47 we had problems with, and what other questions
11 usually present a problem?
12 MR. FROCCARO: 46, 47, your Honor.
13 THE COURT: I will tab those.
14 MR. FROCCARO: Right on through, 46 through, I
15 think, 60.
16 THE COURT: All right.
17 MR. ROSEN: Of course, your Honor -- not of
18 course, but there are many requests for hardships, and
19 that I think your Honor and Judge Tomlinson passed on, and
20 they are pretty much interspersed.
21 THE COURT: The jury is entering at this point.
22 (The jury panel enters the courtroom.)
23 THE COURT: Good morning.
24 My name is Joanna Seybert. I will be the judge
25 presiding at this trial.